STATE EX REL. BUELL vs. FREAR, Secretary of State, Respondent.

*April 21—May 2, 1911.*

*Civil service law: Validity: Constitutional law: Right to hold office: Legislative power: Delegation: Regulation of civil service: Authority of commission: Discretion of appointing officers: Arbitrary extension of exempt class: Declaring constitutional offices vacant: Partial invalidity of statute.*

1. The right to hold public office is not a natural right, but exists only by virtue of some law expressly or impliedly creating and conferring it; and no such right is guaranteed or conferred upon the citizen by the constitution.

2. Where the constitution does not otherwise provide, the legislature has power to create public offices and to prescribe the terms and conditions on which they may be held.

3. Ch. 363, Laws of 1905, regulating "appointments to, and promotions in the civil service of this state . . . according to merit and fitness, to be ascertained as far as practicable by examinations," and providing for appointment of a civil service commission and giving it authority for carrying into effect the

provisions of the act, contains a proper general scheme and is an appropriate exercise of the legislative function to regulate the civil service of the state.

4. The authority conferred on such commission by the act is therein properly restricted to the exercise of the administrative functions of making reasonable rules and regulations and of exercising such other administrative powers as are appropriate, under and pursuant to law, for carrying into effect the legal regulations of the civil service.   .

·5. The act is not invalid upon the ground that it infringes upon the right of appointing officers to exercise a reasonable discretion in the selection of persons for appointment.

6. The commission being authorized to include in the exempt class of the classified service, in addition to the positions specifically named in the law, only those offices as to which they in fact find that competitive or noncompetitive examinations are impracticable on account of the temporary duration of the employment or "for special reasons satisfactory to the commission," the law is not invalid as granting arbitrary power to extend the exempt class.

7. The legislature having no power to declare vacant the constitutional offices of secretary of state, state treasurer, and attorney general, those officers are not subject to the penalty prescribed in that part of sec. 30 which declares that any office held by any person convicted of violating the law shall thereby be rendered vacant.

8. The general and dominant provisions of the act form a complete and proper system of regulation of the subject; and the invalidity of any of its minor provisions does not affect the constitutionality of the law in its general features.

THIS is an original action of *mandamus* brought by *C. E. Buell,* chairman of the state civil service commission, to compel *James A. Frear,* as secretary of state, to audit a bill for services as commissioner in favor of said relator and to issue a warrant on the state treasurer for the payment of the same. The respondent, appearing by the attorney general, has moved to quash the alternative writ of *mandamus,* for the reason, as stated in the motion, that "neither the petition herein nor said alternative writ states facts showing that the relator is entitled to a writ of *mandamus* as prayed."

For the respondent there were briefs by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.* They contended, *inter alia,* that it is a fact to be constantly borne in mind in testing the various provisions of ch. 363, Laws of 1905, that the New York statute, from which it was taken, was enacted pursuant to an amendment to the constitution of that state. Const. N. Y. art. V, sec. 9. The classifications provided for by secs. 8, 9, 12, and 13, and subd. 4 of sec. 14, and subd. 2 of sec. 17, are violative of sec. 1 of art. I of the constitution of this state and of the XIVth amendment to the constitution of the United States. The equal protection of the laws is a pledge, it is held, of the protection of equal laws. *State ex rel. Garrabad v. Dering,* 84 Wis. 585; *Yick Wo v. Hopkins,* 118 U. S. 356, 359. The right to seek or occupy an office or position under the government is a right of every citizen. Any regulation of that right should apply equally to all similarly situated. *Louthan v. Comm.* 79 Va. 196, 199. The power to determine in what cases competitive examinations are practicable does not include the power to exempt one class of citizens from such examinations and exact them from others. All applicants for the same office, in reference to the manner of examinations, must be treated alike. *Matter of Keymer,* 89 Hun, 292, 148 N. Y. 219; 6 Am. & Eng. Ency. of Law (2d ed.) p. 91, note. The preference to veterans (sec. 16) was evidently taken from the New York statute in which it is found by virtue of the express mandate of the constitutional amendment already referred to. Its inclusion renders the act obnoxious to both the federal and state constitutions. For the purpose of performing work for a government the ex-soldier stands upon no different footing from the civilian. *Matter of Keymer,* 148 N. Y. 219, 42 N. E. 667; *Brown v. Russell,* 166 Mass. 14, 43 N. E. 1005. And the same thing has been decided with reference to the application to them of a law licensing peddlers, in *State v. Garbrowski,* 111 Iowa,

496, 82 N. W. 959; *State v. Shedroi*, 75 Vt. 277, 54 Atl. 1081; *Ex parte Jones*, 38 Tex. Crim. 482, 43 S. W. 513; *Comm. v. Snyder*, 182 Pa. St. 630, 38 Atl. 356. The classification provided for by sec. 16, giving preference to veterans of the Civil War, was "based upon existing circumstances only," and precludes any addition to the class created. This is purely class legislation. *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215; *Brown v. Russell*, 166 Mass. 14. As a purported exercise of the police power, the act is wholly unreasonable in respect to the restrictions it imposes upon constitutional officers in the performance of their functions and in the exercise of their prerogatives. The choice of a person to fill an office constitutes the very essence of the appointment, and the selection, it would seem, ought to be the discretionary act of the officer clothed with the power of appointment. *State ex rel. Killeen v. Angle*, 109 N. Y. 564, 573; 19 Am. & Eng. Ency. of Law (1st ed.) 423, and cases cited; *People ex rel. Balcom v. Mosher*, 163 N. Y. 32; *In re Janitor of Supreme Court*, 35 Wis. 410; *Chittenden v. Wurster*, 152 N. Y. 345, 361. The holdings of the New York courts, even under the civil service act of that state, will be found upon examination to be in entire harmony with the reasoning in the *Janitor Case, supra*. *People ex rel. Crane v. Taylor*, 17 Misc. 505, 40 N. Y. Supp. 321; *Chittenden v. Wurster*, 152 N. Y. 345; *People ex rel. Flood v. Gardiner*, 157 N. Y. 520; *Matter of Ostrander*, 12 Misc. 476, 478; *People ex rel. Sweet v. Lyman*, 157 N. Y. 368; *People ex rel. Chamberlain v. Knox*, 45 App. Div. 518; *People ex rel. Conway v. Barker*, 14 Misc. 360; *People ex rel. Cochrane v. Tracy*, 35 App. Div. 265; *People ex rel. Crummey v. Palmer*, 152 N. Y. 217; *People ex rel. Jussen v. Scannell*, 51 App. Div. 360; *People ex rel. Lyon v. Nicoll*, 32 N. Y. Supp. 279; *Sargent v. Gorman*, 14 N. Y. Supp. 481; *Shaughnessy v. Fornes*, 73 App. Div. 462; *People ex rel. Coit v. Wheeler*, 56 Misc. 289, 106 N. Y. Supp. 450. The act delegates legislative power,

contrary to the provisions of sec. 1 of art. IV of the constitution of this state, the result being that it denies that equal protection of the laws guaranteed by the XIVth amendment to the constitution of the United States and sec. 1 of art. I of the constitution of this state. *Slinger v. Henneman,* 38 Wis. 504; *Wheeler v. Ashland,* 88 Wis. 607; *State ex rel. Adams v. Burdge,* 95 Wis. 390, 395; *Ex parte Cox,* 63 Cal. 21; *Little Chute v. Van Camp,* 136 Wis. 526; *Jannin v. State,* 42 Tex. Crim. 631, 51 S. W. 1126. The power vested in the commission by sec. 16, authorizing it to alter the provisions of this section requiring competitive examinations and appointments from the eligible list, and by sec. 17 to suspend the statute, are violative of the fundamental principle that the legislature, and it alone, may, under sec. 1 of art. IV of the constitution of this state, suspend the operation of a law. Cooley, Const. Lim. (7th ed.) 558, 559; *Merchants' Exch. v. Knott,* 212 Mo. 616, 111 S. W. 565; *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 163. Sec. 30 is also violative of sec. 1 of art. VII of the constitution of this state, which provides for the impeachment of constitutional officers, in that it provides a method of removal other than that designated by the constitution of this state. *Louthan v. Comm.* 79 Va. 196, 206.

For the relator there was a brief by *F. C. Winkler* and *Glenway Maxon,* attorneys; a separate brief by *Olin & Butler,* of counsel; and the cause was argued orally by *Mr. Maxon, Mr. Winkler,* and *Mr. J. M. Olin.* They argued that the Wisconsin statute is patterned after the civil service act of the state of New York of 1899, though in certain respects more complete, and is confined wholly to the civil service of the state. The New York statute has been frequently before the courts for construction. Its constitutionality has been many times attacked, but has in all respects been sustained by the courts of New York. *Rogers v. Common Council,* 123 N. Y. 173, 178; *Matter of Keymer,* 89 Hun, 292, 148

N. Y. 219; *People ex rel. Balcom v. Mosher,* 163 N. Y. 32; *Seeley v. Stevens,* 190 N. Y. 158; *People ex rel. McClelland v. Roberts,* 91 Hun, 101, 36 N. Y. Supp. 677; *Chittenden v. Wurster,* 152 N. Y. 345, 352, 353; *People ex rel. Sears v. Tobey,* 153 N. Y. 381; *People ex rel. Sweet v. Lyman,* 157 N. Y. 368, 377; *People ex rel. Tate v. Dalton,* 158 N. Y. 204; *People ex rel. Sims v. Collier,* 175 N. Y. 196; *People ex rel. Percival v. Cram,* 29 Misc. 359, 61 N. Y. Supp. 858; *Hammond v. Ricker,* 121 N. Y. Supp. 696, affirmed 124 N. Y. Supp. 406. To the same effect are the following decisions from Illinois: *People ex rel. Akin v. Kipley,* 171 Ill. 44, 49 N. E. 229; *People ex rel. Akin v. Loeffler,* 175 Ill. 585, 51 N. E. 785; *Kipley v. Luthardt,* 178 Ill. 525, 53 N. E. 74; *Morrison v. People,* 196 Ill. 454, 63 N. E. 989; *People ex rel. Miller v. Chicago,* 234 Ill. 416, 84 N. E. 1044; *Aurora v. Schoeberlein,* 230 Ill. 496, 82 N. E. 860. See the following additional authorities sustaining the constitutionality of civil service laws: *Brenan v. People ex rel. Kraus,* 176 Ill. 620, 52 N. E. 353; *Butler v. White,* 83 Fed. 578; *Kipley v. Illinois,* 170 U. S. 182; *Newcomb v. Indianapolis,* 141 Ind. 451, 40 N. E. 919, 28 L. R. A. 732, 735; 28 Cyc. 403; 29 Cyc. 1379; 6.Am. & Eng. Ency. of Law (2d ed.) 90. They also argued at length the specific objections made by the respondent to the validity of the act in question.

The following statement of the conclusions reached by the court was filed on May 2, 1911:

"In this case it is decided:

"(a) Ch. 363 of the Laws of 1905, regulating 'appointments to, and promotions in the civil service of this state . . . according to merit and fitness, to be ascertained as far as practicable by examinations,' and providing for the appointment of a civil service commission and granting it authority for carrying into effect the provisions of the act, contains in its provisions a proper general scheme, and is an appropriate

·exercise of the legislative function to regulate the civil service of the state.

"(b) The authority conferred on such commissioners by the provisions of this act is therein properly restricted to the exercise of the administrative functions of making reasonable rules and regulations and of exercising such other administrative powers as are appropriate, under and pursuant to law, for carrying the legal regulations of the civil service into effect.

"(c) The general and dominant provisions of the act form ·a complete and proper system of regulation of the subject. If any of the minor provisions are unconstitutional, a matter not now decided, they do not affect the question of the constitutionality of the law in its general features.

"An opinion will be filed in the near future more fully ·expressing the court's views upon the questions arising in this proceeding."

The following opinion was filed June 1, 1911:

SIEBECKER, J.    By sec. 2 of ch. 363, Laws of 1905, it is enacted that "appointments to, and promotions in the civil service of this state shall be made only according to merit and fitness, to be ascertained as far as practicable by examinations, which so far as practicable, shall be competitive. . . . No ·person shall be appointed, transferred, removed, reinstated, promoted or reduced as an officer, clerk, employee or laborer in the civil service under the government of this state, in any manner, or by any means, other than those prescribed in this ·act." This declares the purpose of the legislature, is evidence ·of the objects of the provisions of this act, and evinces an intent to change the previously existing practice and method of selecting persons for the state civil service. An examination of the context of the act shows that it embodies a legislative ·endeavor to remedy existing evils in the civil service and to

promote efficiency in the administration of state affairs. It was a well known and recognized fact that the former system of selecting persons for the public service had brought about a practice which largely disregarded the elements of skill and fitness of the servant for the service and omitted consideration of meritorious, faithful, and deserving service of the servant. It established a political practice of bestowing positions in the public service on persons who were chiefly interested in promoting their personal, political interests and those of their superiors, through whom they secured appointments and expected future preferment. These practices produced in their many obnoxious features a deplorable state of inefficiency, and the uncertainty of tenure in the service tended, obviously, to demoralize the public service. The object of this statute is to correct some of these evils and to place the public service on a basis of fitness and efficiency, through recognition of skill and proficiency upon entrance into the service and of experience and merit in securing promotions, and by giving security of continuance in the service. The various provisions of the act are well calculated as the means for carrying these legislative objects and purposes into effect, and constitute an appropriate scheme for correcting existing evils and for improving the civil service, thereby promoting good government.

The act is assailed by the respondent upon the ground that it abridges the privileges and immunities of the citizens of the state, in that it creates arbitrary and unlawful discriminations between different classes of citizens as regards the right to enter upon and continue in the public service. This contention seems to be founded on the idea that any citizen is guaranteed the unqualified right to enter the public service regardless of his skill and fitness for the service. The privilege of holding a public office is not in its nature of the class of rights which are guaranteed by the constitution as the natural and inalienable rights of every citizen. It has never been treated as a natural right in our governmental system. It is

in its nature a privilege which is extended to the citizens of the state upon such conditions and terms as the people in their sovereign capacity may determine. As is stated in *Conner v. Mayor, etc.* 5 N. Y. 285, 295:

"Public offices . . . are not incorporeal hereditaments; nor have they the character or qualities of grants. They are agencies. With few exceptions, they are voluntarily taken, and may at any time be resigned. They are created for the benefit of the public, and not granted for the benefit of the incumbent. Their terms are fixed with a view to public utility and convenience, and not for the purpose of granting the emoluments during that period to the office-holder."

In *State ex rel. Tesch v. Von Baumbach,* 12 Wis. 310, this court, at an early day in the history of this state, speaking of the people's power concerning public offices, of their right to create constitutional offices, and of the legislative power concerning them, states:

"As to all such [constitutional] offices and public trusts, to which the people, in the exercise of their paramount authority, have impliedly declared who shall be eligible, either by prescribing special circumstances which shall disqualify, or by reserving to themselves or to the appointing authorities a certain freedom of choice, there are very obvious reasons for holding that eligibility is in the nature of a constitutional right, and that the legislature possesses no power of exclusion not given by the constitution; but it is manifest that those reasons cannot be applied to a mere statutory office which the legislature may create and abolish at will, and concerning which the constitution contains no express provisions."

It is furthermore declared that public offices omitted from specific constitutional regulation "are subjected to the discretion of the legislature, which represents the sovereign power of the state, and can make such rules as it deems wholesome and proper for the maintenance of good government." See, also, *State v. Douglas,* 26 Wis. 428; *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 111 N. W. 712; *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 112 N. W. 475; *Fordyce v.*

*State ex rel. Kelleher,* 115 Wis. 608, 92 N. W. 430.   In the last case cited (page 614) this court declares:

"The right to hold office under our political system is not a natural right, but exists only and by virtue of some law expressly or impliedly creating or conferring it. '. . . It may be controlled by the constitution, but, when that instrument does not prescribe the qualifications, it is the province and the right of the legislature to declare upon what terms and subject to what conditions the right shall be conferred. . . . In offices created by the legislature, the right of the legislature to demand such additional qualifications as the nature of the particular office may reasonably require follows legitimately from the rule laid down in the *Von Baumbach Case.*"

We refer to these expressions in former adjudications of this court at length to show that the power to create public offices and the right to prescribe the terms and conditions upon which they may be held by citizens rests with the people in their sovereign capacity, that no natural right thereto exists, and that no such right is guaranteed or conferred on the citizen by the constitution. *Shaw v. Marshalltown,* 131 Iowa, 128, 104 N. W. 1121, 10 L. R. A. n. s. 825.  In our system of government no official power is vested in any of the individuals composing the state, and such power can only be exercised when it has been bestowed by the people through their governmental agencies in parceling out its official functions. The very conception of an office as a bestowal of a part of the function of a state necessarily implies that its functions are to be administered by individuals who possess the qualifications to exercise and perform them.  To accomplish this the state must obviously possess the power to ascertain the existence of such qualifications before selecting the officer and to precribe regulations to carry such power into effect.  We have shown that when this is not done by the people directly through constitutional provisions it then devolves on the legislative branch of the government to prescribe appropriate regulations for such purpose.  These considerations negative

the claim that the legislation in question is invalid because it discriminates in the matter of the equal rights of all citizens to hold office. The state may require of persons seeking to enter its service such qualifications as the legislature may deem appropriate for the maintenance of good government. Nor is this legislative power so restricted in its exercise as to require uniformity in the qualifications for admission to the service. It rests with the legislature to impose such conditions as the nature of the various kinds of services demands and as may be required to remove existing or threatened evils incident thereto. So far as the act prescribes that appointments to and promotions in the civil service of the state "shall be made only according to merit and fitness," to be ascertained by examinations when practicable; creates a commission consisting of three members to be appointed by the governor, by and with the advice of the senate, for the purpose of carrying the law into effect; grants authority to them to make rules for carrying into effect the powers conferred on them; and excepts certain offices from the operation of the statute, it is an appropriate exercise of legislative power to secure improvement in the civil service; to regulate the civil service for the purpose of eradicating existing evils; to secure servants of skill and fitness; to deal more justly with servants entitled to reward for meritorious and efficient service; and to effectuate the purpose of promoting better government.

The contention is specifically made that the act is invalid in that it deprives the person exercising the power of appointment to public office of the right to employ a reasonable discretion in making a selection of persons qualified for office. Sec. 6 of the act provides: "No appointing officer shall . . . select or appoint any person for appointment, employment, promotion or reinstatement, except in accordance with the provisions of this act and the rules and regulations prescribed thereunder." Sec. 16 provides that upon notice by an appointing officer to the commission of the existence of a vacancy

in the competitive class, the commission within ten days "shall certify from the register of eligibles appropriate for the group in which the position to be filled is classified, the three names at the head thereof which have not been certified three times to the department or office in which the vacancy exists." Appointments are to be made from such lists unless objection is made and sustained upon the grounds provided in sec. 11. Sec. 9 provides that such appointments "shall be for a probationary period of one, two or three months in the discretion of the appointing officer, but dismissal for cause may be made during such period." If such probationer's conduct or capacity is unsatisfactory to the person appointing him he shall be notified in writing that he will receive no absolute appointment, otherwise his appointment is to be deemed absolute. The statute, in sec. 14, exempts from the operation of the statute certain positions, including "one deputy or assistant of each principal executive officer and the chief clerk or secretary of any board or commission," "one stenographer for each appointing officer," and "all other offices or positions, except laborers, for the filling of which competitive or noncompetitive examinations shall be found by the civil service commission to be impracticable on account of the temporary character of the employment or for special reasons satisfactory to the commission. . . . No office or position shall be classified by the commission in the exempt class except after public hearing by the commission or any member or the chief examiner thereof."

It is manifest that these provisions are a legislative expression on the subject as to what offices it was deemed appropriate that the appointing officers should have unlimited discretion to select certain appointees who stand in close and confidential relations to them. The opinion doubtless also prevailed in the legislature that a selection from three candidates on the certified eligible list would provide a sufficient scope for the exercise of a reasonable discretion by the ap-

pointing officer in making appointments of persons found to
be qualified to perform services under the appointing officer.
Such a provision in a similar law was approved in *People ex
rel. Akin v. Kipley,* 171 Ill. 44, 49 N. E. 229.  We perceive
no unreasonable restriction in the nature of this regulation
for the exercise of the discretion of the appointing officer to
select an appointee found to possess the qualifications pursu-
ant to the tests prescribed by the law.  The tests are to be
practical in their nature and appropriate to ascertain the fit-
ness and skill of the applicant and impose no unreasonable
conditions or restrictions on the appointing officer in the ex-
ercise of his power, and clearly serve to aid him in selecting
competent servants.  A statement of the court in *Rogers v.
Common Council,* 123 N. Y. 173, 25 N. E. 274, with refer-
ence to the civil service law of that state, is applicable to the
policy involved in this legislation:

"Looking at it as a matter of common sense, we are quite
sure that the framers of our organic law never intended to
oppose a constitutional barrier to the right of the people
through their legislature to enact laws which should have
for their sole object the possession of fit and proper qualifica-
tions for the performance of the duties of a public office on
the part of him who desired to be appointed to such office.
. . . Statutes looking only to the purpose of ascertaining
whether candidates for an appointive office are possessed of
those qualifications which are necessary for a fit and intelli-
gent discharge of the duties pertaining to such office are not
dangerous in their nature, and in their execution they are
not liable to abuse in any manner involving the liberties of
the people."  See, also, *People ex rel. Akin v. Kipley,* 171 Ill.
44, 49 N. E. 229; *Newcomb v. Indianapolis,* 141 Ind. 451,
40 N. E. 919.

We are persuaded that if the statute is administered within
the limits of the provisions as therein prescribed by the leg-
islature, it in no way infringes upon the rights of the appoint-
ing officers in making their selections and appointments to the
public service.

It is contended that the commission is granted arbitrary power to extend the exempt class. We do not so regard it. They must include only those offices in this class as to which they in fact find that competitive or noncompetitive examinations are impracticable on account of the temporary duration of the employment or for other special reasons. The phrase, "for special reasons satisfactory to the commission," means that the commission are to investigate, and when they find as a matter of fact that the merit and fitness of persons to perform the duty of such offices cannot be ascertained by an examination, then they are to place such offices in the exempt class. As to all other positions in the classified service the commission must enforce the tests prescribed by the law to ascertain the qualifications of applicants.

It is also contended that the law is unconstitutional as an attempt to delegate legislative power to the commission. The case of *State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347, gives a concise statement of the principle by which this contention must be tested:

"The true test and distinction whether a power is strictly legislative, or whether it is administrative, and merely relates to the execution of the statute law, 'is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law.' The first cannot be done. To the latter, no valid objection can be made."

It is claimed that the powers conferred on the commission by sec. 7, as to prescribing and amending rules; by sec. 9, relating to putting rules into effect, classifying offices, places, and employments; by sec. 12, providing for arranging all offices, positions, and employments in the classified civil service into the five classes specified in the act; by sec. 14, giving the commission the power to determine upon certain exemptions on account of the impracticability of ascertaining the merit of applicants by examinations; by

subd. 2 of sec. 17, providing that the provisions of the statute requiring examinations may be suspended upon evidence showing peculiar and exceptional qualifications of the various kinds specified in the statute to be required,—are, in their nature, a grant of legislative power to the commission. The argument is made that the provisions of these sections confer legislative power on the commission, in that they are thereby authorized to create penal offenses, to make general legal rules, to classify the public service, and to suspend the operation of the statute. It is unnecessary to restate these various provisions here in detail. An examination of them, in connection with the other provisions of the statute, shows that the legislature provided a complete classification of the whole civil service of the state and specified what offices are within the classified and which within the unclassified civil service and into what group or classes the classified service is divided, and it imposes the duty on the commission of arranging all existing offices and places and those hereafter created pursuant to such classification. This is in no sense the power of making law. It is purely administrative action to make concrete application of the legislative classification of the service and to put into effect the general rules prescribed by the statute. It would be well nigh impossible to embody the name of every office within the civil service of the state in a statute for the purpose of actually arranging them into groups, as is directed in this law. When the legislature provided into what general classes and groups the offices should be arranged, it became purely an administrative function of the commission to so arrange them. We have already shown that exemption from examination under the conditions prescribed in the act is not a suspension of the operation of the statute, but is the execution of an administrative function to ascertain the facts and conditions under which the law provides that such exemption shall be made. The authority thus conferred invests the commission with no arbitrary and uncontrolled discretion, but

directs them to ascertain the facts and to apply the rules of law thereto under the prescribed terms and conditions. Such action is not legislative in character, but is the performance of an executive and ministerial duty within the regulations provided in the act.

It is contended furthermore that the power to make rules, as conferred on the commission, is clearly an exercise of legislative power. The act provides that the commission shall "prescribe, amend and enforce rules and regulations for carrying into effect the provisions of this act" (sec. 7), "shall put into effect rules for the classification of the offices, places and employments, . . . shall also make rules and regulations providing for examinations for positions in the classified service, . . . appointments to, removals from, and promotions and reductions therein, and for such other matters as are necessary to carry out the purposes of this act" (sec. 9). It must be observed that in every part of the act conferring this power it is declared that the rules which the commission are authorized to prescribe and enforce are such as are necessary for the purposes of carrying into effect "the purposes of this act." No provision of the act, directly or by implication, authorizes any rule to be made that can add to or in any way alter or amend the regulations made by the law. Only such rules are authorized as serve to provide the details for the execution of the provisions of the law in its actual administration, to fix the way in which the requirements of the statute are to be met, and to secure obedience to its mandates.

It would be impracticable at this time to attempt an analysis of the rules the commission may have adopted. Such a review is best accomplished when the validity of some particular rule or regulation is brought to the court's attention. The purposes of this case are fully answered in finding that the power to make appropriate rules and regulations for the purpose of carrying the provisions of the statute into effect is properly conferred on the commission and restricts them to

making and enforcing such rules as are appropriate to obtain an effective execution of the law.

Our attention is directed to the fact that among the penalties embraced in sec. 30 it is provided that: "If any person shall be convicted under this section, any public office which such person may hold shall by force of such conviction be rendered vacant." It is contended that this language was intended to include the offices of the secretary of state, the state treasurer, and the attorney general of the state. The language employed is broad enough to include these officers as subject to the penalties prescribed. It is manifest, under the principle of the decision in the case of *State ex rel. Tesch v. Von Baumbach,* 12 Wis. 310, that the legislature possesses no power to declare these constitutional offices vacant if the incumbent be found guilty of violating any of the provisions of this act, and it must be held that these officers are not subject to this specific element of the penalties, the vacation of his office. This result, however, does not affect the validity of the provisions of the act in its entirety.

We do not deem it necessary to discuss any other parts of the statute, for, as heretofore stated, the act in its dominant provisions makes provision for a complete general scheme and is an appropriate exercise of the legislative function to regulate the civil service of the state. The validity of any of the minor provisions of the act, which may be challenged on occasions when actual controversies arise, cannot affect the constitutionality of the act as a whole, and we therefore deem it unnecessary to indulge in further discussion of its provisions at this time.

*By the Court.*—The motion to quash the alternative writ is denied, and the alternative writ is made peremptory. The secretary of state is commanded to proceed to audit the relator's claim and to issue to him a warrant upon the state treasurer for the payment of the amount found due him upon such audit. No costs are allowed to either party.