STATE, Appellant, vs. LANGE CANNING COMPANY, Respondent.

*April 15—November 14, 1916.*

*Master and servant: Female employees: Regulation of hours of labor: Statute construed: Constitutional law: Legislative power: Delegation to industrial commission.*

1. Sec. 1728—2, Stats. 1915, which, until the industrial commission shall issue general or special orders on the subject, forbids the employment of any female "at day work [between 6 a. m. and 8 p. m.] more than ten hours in any one day, or more than fifty-five hours in any one week," or "at night work [between 8 p. m. and 6 a. m.] more than eight hours in any one night, or more than forty-eight hours in any one week," limits to ten hours the time during which women may be employed in any one calendar day, where the work is done partly before and partly after 8 p. m.

2. Sec. 1728—2, Stats. 1915, is construed as laying down the general rule that women shall not be permitted to work in any place for such a period of time as shall be prejudicial to their health, and authorizing the industrial commission upon investigation to determine as a fact what class or classes of employment are dangerous or prejudicial to the life, health, safety, or welfare of females, and to determine as a fact how long females may be engaged in the several classes of employment reasonably without danger or prejudice to the life, health, safety, or welfare of such females, and to establish by general orders such classification and the time which females may labor therein, so found. So construed and to that extent the statute does not attempt unlawfully to delegate legislative power to the commission, and is valid.

APPEAL from an order of the circuit court for Eau Claire county: JAMES WICKHAM, Circuit Judge. *Reversed.*

Action to recover forfeiture for violations of sec. 1728—2, Stats., regulating hours of employment of women. The complaint sets forth thirty causes of action, in each of which continuous employment of a woman by the defendant in a pea-canning factory at a gainful occupation for a continuous period of from fourteen hours to seventeen and one-half hours, exclusive of meal periods, part of which working period was before and part after 8 o'clock p. m., is charged. The statutory provisions material are as follows:

"Section 1728—2. No female shall be employed or permitted to work in any place of employment or at any employment for such period or periods of time during any day, night or week, as shall be dangerous or prejudicial to the life, health, safety or welfare of such female. It shall be the duty of the industrial commission and it shall have power, jurisdiction and authority to investigate, ascertain, determine and fix such reasonable classification, and to issue general or special orders fixing a period or periods of time, or hours of beginning and ending work during any day, night or week, which shall be necessary to protect the life, health, safety or welfare of any female, or to carry out the purposes of sections 1728—1 to 1728—4, inclusive, of the statutes. Such investigations, classifications and orders, and any action, proceeding or suit to set aside, vacate or amend any such order of said commission, or to enjoin the enforcement thereof, shall be made pursuant to the proceeding in sections 2394—41 to 2394—70, inclusive, of the statutes, which are hereby made a part hereof, so far as not inconsistent with the provisions of sections 1728—1, 1728—2, 1728—3, and 1728—4 of the statutes, and every order of the said commission shall have the same force and effect as the orders issued pursuant to said sections 2394—41 to 2394—70, inclusive, of the statutes, and the penalties therein shall apply to and be imposed for any violation of sections 1728—1, 1728—2, 1728—3 and 1728—4 of the statutes. Until such time as the industrial commission shall so investigate, ascertain, determine and fix, and shall issue general or special orders thereon, the periods of time specified in the attached schedule shall be deemed to be dan-

gerous or prejudicial to the life, health, safety or welfare of females.

### "Schedule.

"At day work, more than ten hours in any one day, or more than fifty-five hours in any one week.

"At night work, more than eight hours in any one night, or more than forty-eight hours in any one week.

"Day work is work done between six o'clock a. m., and eight o'clock p. m., of the same day; provided that employment not more than one night in the week after eight o'clock p. m. shall not be considered night work.

"Night work is work done between eight o'clock p. m. and six o'clock a. m. of the following day.

"Less than one hour during each day or night for dinner or other meals."

Sub. (1) and (2) of sec. 1728—1 are as follows:

"(1) The term 'place of employment' shall mean and include any manufactory, mechanical or mercantile establishment, laundry, restaurant, confectionery store, or telegraph or telephone office or exchange, or any express or transportation establishment.

"(2) The term 'employment' shall mean and include any trade, occupation or process of manufacture, or any method of carrying on such trade or occupation in which any female may be engaged, or for any place of employment, as herein defined."

Omitting the formal allegations of the first cause of action, the material part thereof is as follows:

"That on the 26th and 27th days of July, 1915, the defendant employed, permitted, and suffered to work in said canning factory at a gainful occupation, i. e. doing work and labor connected with the preserving and canning of peas and incident thereto, for hire or wages, for a continuous period of fourteen hours, exclusive of meal periods, one Mrs. J. Bauers, a woman, as follows: from 9:30 a. m. to 12 m. on July 26th, and from 1 p. m. July 26th to 12:30 a. m. July 27th, contrary to the provisions of sec. 1728—2 of the Wisconsin Statutes."

The other causes of action are the same excepting as to persons and time of employment. The defendant demurred to the complaint, and the demurrer was sustained on the theory that the period of work described in the complaint, a part being before 8 o'clock p. m. and a part after that hour, is not defined in the statute as either night work or day work; that the statute should be construed as prohibiting the employment of women more than ten hours in any one day at day work, as defined, and more than eight hours in any one night at night work, but that no limitation as to time is declared by the statute when part of the work is performed before 8 o'clock p. m. and part of the work is performed after that hour in any one calendar day. From the order sustaining the demurrer the *State* brings this appeal.

For the appellant there was a brief by the *Attorney General, J. F. Baker,* assistant attorney general, and *Fred Arnold,* district attorney of Eau Claire county; and the cause was argued orally by the *Attorney General.*

For the respondent there was a brief by *Sturdevant & Farr,* and oral argument by *L. M. Sturdevant.*

The following opinions were filed May 2, 1916:

ROSENBERRY, J. Three questions are presented for determination upon this appeal:

(1) Does the statute limit the number of hours women may be employed in any one calendar day where the work is done partly before and partly after 8 o'clock p. m. of that day?

(2) Is the statute void for the reason that it unlawfully delegates legislative power to the industrial commission?

(3) If it is held that the provision delegating certain powers to the industrial commission is unconstitutional and therefore void, can the remainder of the act stand as a valid enactment?

1. It seems to us clear that the legislature intended to fix the maximum period of time during which a female might work in any one day at ten hours and in any one week at fifty-five hours. The statute specifically provides that where all of the work is done between the hours of 8 o'clock p. m. on one day and 6 o'clock a. m. of the following day, it shall be denominated night work and shall not exceed eight hours. The legislature has not stated in express terms what the limitation should be where the work is performed partly before 8 o'clock p. m. and partly thereafter in the same day. Had this matter been brought to its attention it might have prescribed a still different limitation, but, having failed to make such specific limitation, there is no doubt in our minds that the amount of work which may be done in any one day, meaning thereby the period from midnight to midnight, is limited to ten hours. The complaint therefore states a cause of action.

So construed, the law is reasonable and the intent of the legislature is given effect. Construed in accordance with the contention of the defendants, it would permit a female to work fourteen or more hours in one calendar day. Such a construction would be subversive of the purpose of the law and would lead to the absurd result of permitting women to work more hours per day when the service is rendered partly in the nighttime than would be permitted if the work were all done in the daytime, and that in the face of a declaration by the legislature that night work is more detrimental to the health of women than day work. Such a construction should be avoided. *State ex rel. Husting v. Board of State Canvassers,* 159 Wis. 216, 150 N. W. 542.

2. Is the law void in so far as it attempts to delegate to the industrial commission power to "investigate, ascertain, determine and fix such reasonable classification, and to issue general or special orders fixing a period or periods of time, or hours of beginning and ending work during any day, night or week, which shall be necessary to protect the life, health,

safety or welfare of any female, or to carry out the purposes of sections 1728—1 to 1728—4, inclusive, of the statutes?"

It has been said by Chief Justice JOHN MARSHALL that

"The question, whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other." *Fletcher v. Peck,* 6 Cranch (10 U. S.) 87, 128.

This principle, enunciated early in the development of the constitutional law of this country, has been repeatedly recognized, affirmed, and acted upon by this court. *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 549, 90 N. W. 1098; *State ex rel. Hessey v. Daniels,* 143 Wis. 649, 653, 128 N. W. 565; *State v. Redmon,* 134 Wis. 89, 112, 114 N. W. 137. We approach this question with a full appreciation of the duties, responsibilities, and obligations of the court in the premises.

"The legislative power shall be vested in a senate and assembly." Sec. 1, art. IV, Const.

It is a principle of elementary law that "under our constitutional form of government the legislature cannot delegate legislative powers to any officer or to any body of persons, individual or corporate, aside from the power to confer local legislative and administrative powers on county boards and municipal corporations." *State ex rel. Carey v. Ballard,* 158 Wis. 251, 257, 148 N. W. 1090.

The exercise of the police power of the state for the protection of women and children by prescribing the hours in which they may work in certain occupations, the conditions under

which their work shall be performed, and providing numerous other details for their welfare, is purely a legislative function, and a legislative enactment in the exercise of that power should be given full force and effect.    Over thirty states have adopted legislation upon this general subject.    Many of these enactments in the early history of legislation of this class were challenged as unconstitutional.    That the legislature may, however, within constitutional limits, enact such a law is now placed beyond debate.    Improvements in methods of transportation, the invention of machinery, and improved methods of communication, have resulted in the removal from the home, the farm, and the small shop of many activities which come very close to the life of the people.    The work is now done in factories in great centers of population under conditions which may be and often are prejudicial to the health and welfare of those engaged in such occupations, hence the necessity of legislative regulation.    Speaking of the great changes which have taken place since the adoption of the constitution of the United States and of the spirit in which they should be met by the courts, the United States supreme court said:

"They are mentioned only for the purpose of calling attention.to the probability that other changes of no less importance may be made in the future, and that while the cardinal principles of justice are immutable, the methods by which justice is administered are subject to constant fluctuation, and that the constitution of the United States, which is necessarily and to a large extent inflexible and exceedingly difficult of amendment, should not be so construed as to deprive the states of the power to so amend their laws as to make them conform to the wishes of the citizens as they may deem best for the public welfare without bringing them into conflict with the supreme law of the land.

"Of course, it is impossible to forecast the character or extent of these changes, but in view of the fact that from the day Magna Charta was signed to the present moment, amendments to the structure of the law have been made with in-

creasing frequency, it is impossible to suppose that they will not continue, and the law be forced to adapt itself to new conditions of society, and, particularly, to the new relations between employers and employees, as they arise." *Holden v. Hardy,* 169 U. S. 366, 387, 18 Sup. Ct. 383.

What is true of the constitution of the United States is true of the constitution of the state of Wisconsin, except perhaps that the latter may be more easily amended.   It is as true of one as of the other, they should be so construed, as far as possible, as to effectuate rather than to defeat the will of the people as expressed in legislative enactment.

The thing which is vested by our constitution in the senate and assembly and which cannot be delegated is "legislative power," a term more easily understood than defined.   A simple definition is that it is the power to make laws.   *In re Appointment of Revisor,* 141 Wis. 592, 598, 124 N. W. 670. Law is defined as "the aggregate of those rules and principles of conduct which the governing power in a community recognizes as those which it will enforce or sanction, and according to which it will regulate, limit, or protect the conduct of its members."   Bouv. Law Dict.   The power, then, which is vested in the senate and assembly and which cannot be delegated is the power to declare what rules and principles of conduct shall govern the citizens of this state and which shall be enforced and according to which the conduct of citizens of this state is to be regulated, limited, or protected.   The provision delegating to the industrial commission the power to fix "reasonable classification, and to issue general or special orders fixing a period or periods of time, or hours of beginning and ending work . . . which shall be necessary to protect the life, health, safety or welfare of any female," is manifestly an attempt to delegate to the industrial commission the power and authority to declare those rules and principles of conduct which shall be enforced in this state as regulating or limiting the conduct of the citizens thereof in relation to the

employment of women and protecting women employed in certain occupations.

All occupations are not prejudicial to the health and welfare of women. The power to declare what classes of occupations are so prejudicial is vested in the legislature. Even those occupations which admittedly are inherently detrimental to the health of women may not be so if conducted under certain prescribed conditions or if the hours of employment are sufficiently limited. It is the duty and function of the legislature to declare in a general way under what conditions women shall be allowed to labor and to fix the limitation as to the hours during which they may be required to perform labor. This duty it cannot delegate.

The rule forbidding the delegation of legislative power is based upon experience and is vital to the maintenance of the integrity of our system of government. *Field v. Clark,* 143 U. S. 649, 692, 12 Sup. Ct. 495. The practical result of a delegation of legislative power is to remove the specific constitutional restrictions thrown about the exercise of that power. This is strongly illustrated by the orders attempted to be issued by the industrial commission under this statute, which are in part as follows:

### *"Order No. 1.*

"In pea-canning factories where the laws regarding safety and sanitation and the orders of the industrial commission issued thereunder are complied with and where due provision has been made for handling the crop, women employees may be employed not to exceed ten hours each day between the beginning and ending of work, exclusive of meal times."

### *"Order No. 2.*

"During the rush season, when abnormal conditions prevail by reason of breakdowns, bad weather, or climatic changes, women who are engaged in the process of canning only, may be employed not to exceed twelve hours each day from beginning to ending of work, exclusive of meal times, provided that such twelve-hour days shall be limited to fifteen

in any one year; and provided further that time-and-a-half pay shall be given for all time worked over ten hours a day. A day shall be considered to be the period from beginning to ending of work in any twenty-four hours."

Attention is called to order No. 2. Are the provisions of this order in the interest of women employees or in the interest of their employers? Does the amount of wages a woman receives for doing certain specified work determine whether or not the work is detrimental to her health? Is it in the interest of the public to permit women to work under unhealthful conditions for high wages? The power granted by the statute to issue general orders "to protect the life, health, safety and welfare of any female" is here exercised to prolong the hours during which a female may be required to work and in the interest of her employer and not in her interest. Then, too, what would a special order "to protect the life, health, safety and welfare of any female" be? Is it supposed that the commission should determine what hours a particular female should be allowed to work for a designated employer at a designated task? This is a thing the legislature itself could not do.

Having under consideration the validity of a statute providing that "it shall be unlawful and presumptively injurious to persons and property to drive piles . . . in Rock river, within the limits of the county of Rock," this court said:

"This statute is discriminating and class legislation, in violation of the spirit of our constitution, and contrary to the principles of civil liberty and natural justice. It gives to a certain class of citizens privileges and advantages which are denied to all others in the state under like circumstances, and subjects one class to losses, damages, suits, or actions from which all others, under like circumstances, are exempted. . . . Its operation is restricted and partial to that part of Rock river within the county of Rock, while said river elsewhere and all other rivers are excluded. . . . It would be difficult, if not impossible, to crowd into so short a statute any

more or greater violations of that principle, so essential to a free government, of 'equal, general, and standing laws.' For these reasons this statute is unconstitutional and void." *Janesville v. Carpenter,* 77 Wis. 288, 302, 303, 46 N. W. 128. See *State ex rel. Kellogg v. Currens,* 111 Wis. 431, 434, 87 N. W. 561.

However, the requirement that laws shall be general in their application does not prevent classification, and a law is said to be general when it applies to all persons of a specified class in the same manner and to the same extent.

"It cannot be denied but that our constitutions, state and federal, are calculated to secure equal protection to all persons, subject to the rules of just classification. When by statute a person, natural or artificial, is denied an equal remedy in the law or equal protection in the courts such statute is void. . . . To this broad rule of equality of all persons before the law is the exception of the right under certain circumstances of proper classification, but this classification must be reasonable and based upon certain rules which bear a just relation to the act in respect to which the classification is made." *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 157, 113 N. W. 456.

"While it is true that the necessity and propriety of classification are primarily legislative questions, it is also true that the legislature must keep within the limits of constitutional bounds." *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 159, 113 N. W. 456, citing with approval the rule laid down by the supreme court of Minnesota as follows:

"The true practical limitation of the legislative power to classify is that the classification shall be upon some apparent natural reason—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them." *Nichols v. Waller,* 37 Minn. 264, 272, 33 N. W. 800.

If the people of this state desire to have vested in some constituted authority the power to so minutely regulate their affairs as to prescribe the conditions under which any female may be employed in certain occupations, making as a part of

the condition the amount of wage which she shall receive, they should proceed in an orderly manner to vest such power in such body by amendment to the constitution in the manner provided therefor.

The industrial commission or other designated governmental agency may properly be charged with the performance of many duties and the exercise of many powers in relation to the subject matter of this statute. It is impossible to set exact limits or to specify in detail in advance the duties and powers that may be so delegated and vested. Observing the spirit as well as the letter of the decisions of this court, there should be little difficulty from a practical standpoint in keeping within the limits of constitutional restraint. *Minneapolis, St. P. & S. S. M. R. Co. v. Railroad Comm.* 136 Wis. 146, 116 N. W. 905; *State ex rel. Buell v. Frear,* 146 Wis. 291, 131 N. W. 832, and other cases already referred to, deal exhaustively and authoritatively with this matter.

In *State ex rel. Buell v. Frear, supra,* speaking of the authority conferred upon the civil service commission, the court said:

"The authority thus conferred invests the commission with no arbitrary and uncontrolled discretion, but directs them to ascertain the facts and to apply the rules of law thereto under the prescribed terms and conditions. Such action is not legislative in character, but is the performance of an executive' and ministerial duty within the regulations provided in the act. . . .

"No provision of the act, directly or by implication, authorizes any rule to be made that can add to or in any way alter or amend the regulations made by the law. Only such rules are authorized as serve to provide the details for the execution of the provisions of the law in its actual administration, to fix the way in which the requirements of the statute are to be met, and to secure obedience to its mandates." Pages 305, 306.

The general principle could not perhaps be stated in more apt and appropriate language. We conclude that the pro-

vision attempting to delegate certain powers to the industrial commission is void.

3. The question then arises, May the remainder of the statute stand as a valid enactment? It is clear that the legislature intended to limit the hours which women might be employed in the occupations specified, and that such regulations as are prescribed are by the express terms of the statute to remain in force for some considerable length of time. There is no reason to suppose that the legislature would not have adopted the statute as it stands without the provision hereby declared to be void as in violation of the constitution. The law is complete as it stands, and the void provision does not seem to have been the inducement for the enactment of the remainder of the law. *State ex rel. Carey v. Ballard,* 158 Wis. 251, 148 N. W. 1090; *State ex rel. Husting v. Board of State Canvassers,* 159 Wis. 216, 229, 150 N. W. 542.

*By the Court.*—The order appealed from is reversed, and the cause remanded for further proceedings according to law.

WINSLOW, C. J. (*concurring in the result*). I agree that the statute limits the hours of work to ten hours when the work is done partly before and partly after 8 o'clock p. m. and hence that the demurrer to the complaint was properly overruled.

The question of the validity of those portions of the statute authorizing the industrial commission to make general or special orders is not necessarily involved in the case, and I withhold my assent to that part of the opinion which holds such provisions void as unlawful delegations of legislative power. When that question is essential to the decision of a case I shall wish to give it more careful examination than I am able to give it now.

The respondent moved for a rehearing.

In support of the motion there was a brief by *Sturdevant & Farr.*

Briefs upon the motion were also filed by the *Attorney General;* by *Quarles, Spence & Quarles, amici curiæ,* with *J. E. Dodge* and *I. A. Fish,* of counsel; by *Crownhart & Wylie, amici curiæ,* in behalf of the Wisconsin Federation of Labor, the Consumers' League, and the Wisconsin Pea Canners' Association; by *James T. Drought, amicus curiæ,* counsel for the Shoe Manufacturers Association of Milwaukee; and by *Lawrence A. Olwell* and *Bernard V. Brady, amici curiæ,* counsel for the Wisconsin State Laundrymen's Association.

The following opinion was filed November 14, 1916:

ROSENBERRY, J.   Since the opinion in this case was filed the matter has been fully reargued by brief, and upon further study and reflection we are of the opinion that the statute may properly be construed as laying down the general rule that women shall not be permitted to work in any place for such a period of time as shall be prejudicial to their health and authorizing the industrial commission upon investigation to determine as a fact what class or classes of employment are dangerous or prejudicial to the life, health, safety, or welfare of females, and to determine as a fact how long females may be engaged in the several classes of employment reasonably without danger or prejudice to the life, health, safety, or welfare of such females, and to establish by general orders such classification and the time which females may labor therein, so found; and we are of the opinion that as so construed and to that extent the law should be upheld, for the reason that

"The authority thus conferred invests the commission with no arbitrary and uncontrolled discretion, but directs them to ascertain the facts and to apply the rules of law thereto under the prescribed terms and conditions.   Such action is not legislative in character, but is the performance of an executive and ministerial duty within the regulations provided in the act."   *State ex rel. Buell v. Frear,* 146 Wis. 291, 305, 306, 131 N. W. 832.

So much of our former opinion as is inconsistent with the views here expressed is withdrawn. We shall not attempt at this time to mark the boundaries of the commission's authority under the act as here construed, no order of the commission being before us in this action, but determination of that matter will be postponed until the action of the commission is in some way directly called in question. The modification of our views results in no modification of the mandate.

*By the Court.*—The motion for a rehearing is denied, without costs.

ESCHWEILER, J., took no part.