W. B. LePage *v.* Ernest L. Bailey, *Chief of the Department of Mines of West Virginia.*

(No. 7674)

Submitted July 26, 1933.   Decided August 3, 1933.

*T. C. Townsend* and *Ben Moore,* for relator.

*Homer A. Holt,* Attorney General, and *Ira J. Partlow,* Assistant Attorney General, for respondent.

HATCHER, JUDGE:

This is a proceeding in mandamus. The petitioner was regularly appointed a district mine inspector on January 1, 1930, for the term of four years ending December 31, 1933. Commencing with the month of September, 1932, his salary was involuntarily reduced 15% and on March 17, 1933, the chief of the department of mines notified him that his services would not be needed after March 20, 1933. In this proceeding, the petitioner seeks to compel the mining chief (a) to issue him a requisition for the sum representing the 15% cut on his salary between September 1, 1932, and March 20, 1933; (b) to reinstate him, and (c) to issue a requisition for his full salary during the period of his ouster.

1. The Extraordinary Session of the Legislature in 1932 directed a reduction of 15% in the salaries between $2,000 and $3,000 of public officers, but provided that the reduction should not apply to an official then holding a termal office (such as petitioner), unless he should ''voluntarily accept the same and so signify in writing to the proper disbursing officer'', etc. See Acts 1932, ch. 20, sec. 1. The minimum salary of petitioner as fixed by statute when he was appointed in 1930 was $250.00 a month. He indorsed and cashed monthly warrants after September 1, 1932, for the sum of $212.50. He filed no renunciation of any part of his salary with the state treasurer, but the respondent contends that petitioner's indorsements of his warrants signified a voluntary acceptance of the cut. The indorsements were for the sole purpose of securing the specific money represented by the warrants. Therefore, they cannot be treated as a waiver of the salary due petitioner which was not included in the warrants. ''There is no principle upon which an individual, appointed or elected to an official position, can be compelled to take less than the salary fixed by law. The acceptance and discharge of the duties of the office, after appointment, is not a waiver of a statutory provision fixing the salary thereof. * * * The doctrine of

waiver has no application to any such case." *Satterlee v. Board, etc.*, 75 N. Y. 38, 42. Accord: *Glavey v. U. S.*, 182 U. S. 595, 610, 45 L. Ed. 1247. "An officer who accepts and receipts for less than the amount of his salary provided by law may recover the remainder not so received." *Board, etc. v. Chapman*, 22 Ind. App. 60, 53 N. E. 187, 188.

2. The Acts of 1925, ch. 88, secs. 7-10, provided that the chief of the department of mines, with the approval of the governor, should divide the state into twenty-five mining districts, which was done. The enactment further provided that the departmental chief should appoint one inspector for each mining district and that after December 31, 1925, the appointments of all inspectors "shall be for a term of four years" (except to fill unexpired terms) removable from office by the chief for "incompetency, neglect of duty, drunkenness, malfeasance or for other good cause". The petitioner was appointed under this law. At the time petitioner was removed, the chief reduced the number of mining districts in the state to twenty. He then simultaneously dismissed nine district inspectors, including the petitioner, and shortly afterwards appointed four new inspectors. The chief testified in regard thereto as follows: That the regrouping of the districts was made for economic reasons, under the instructions and with the approval of the governor; that the new appointees were no better qualified to serve than the ones dismissed; and that his only real reason for reducing the number of the old inspectors below twenty, to sixteen, and then appointing four new inspectors was because he "wanted new men". He said: "I felt that a little new blood would not be detrimental and would be very beneficial for the department." (Pursuant to that policy, the chief later dismissed twelve more of the old inspectors, and replaced them with new appointees.)

There is no claim that any of the causes for dismissal set forth in the Acts of 1925, existed in relation to the petitioner. On the contrary, the chief gave petitioner a letter stating that he was "industrious, sober and efficient" and had performed his duties as district mine inspector "in a capable and efficient manner". The chief would justify his action solely under House Bill No. 553, passed by the legislature on March 11, 1933, and effective from passage. That Act empowers the

governor (for a period of two years from date) "when in his opinion the financial affairs of the state government demand", along with other powers, to limit the activities of any state agency and to dismiss employees whose services become unnecessary. The constitutionality of the Act is questioned on the ground that it is a delegation of legislative power to an executive. Without passing on the constitutionality of the other powers conferred on the governor in the Act, the one above referred to is not such a delegation, and the Act declares its provisions to be separable. It is well settled that an enactment may provide "that it shall become operative only upon some certain act or event, or, in like manner, that its operation shall be suspended; and the fact of such act or event, in either case may be made to depend upon the ascertainment of it by some other department, body or officer, which is essentially an administrative act." *State v. Burdge,* 95 Wis. 390, 402, 70 N. W. 347, 350. Leading authorities supporting this pronouncement are *W. T. Z. R. Co. v. Commissioners,* 1 Ohio St. 77, 88-9; *Locke's App.,* 72 Pa. 491, 498-9; *Field v. Clark,* 143 U. S. 649, 693-4, 36 L. Ed. 294; *Mutual, etc.* v. *Commission,* 236 U. S. 230, 245, 59 L. Ed. 552; Cooley's Const. Lim. (8th Ed.), pp. 224, etc. Whether the condition of the financial affairs of the state demanded a limitation of the activities of the mining department was a mere matter of accounting—essentially an administrative act. When that fact was determined by the governor then the actual limitation of the department was also an administrative, and not a legislative, function. But it will be observed that the governor's authority under the Act is predicated solely upon *the demand of the state's financial affairs.* When that demand is no longer served, his power of summary dismissal under the Act ceases. There is nothing in the record to indicate that the governor expressed an opinion that the mere substitution of new inspectors for old ones (admittedly without different qualifications) would do anything to relieve the financial strain of the state. It is self-evident that such substitution would serve no such purpose.

We are therefore of opinion that in order to meet the economic stress, the governor, acting through the mining chief,

had the authority to reduce the number of mining districts from twenty-five to twenty and to make a like reduction in the number of district inspectors; but that the discharge of inspectors below twenty merely to make room for "new blood", was not within the authority conferred by the Act.

It is no answer to petitioner's demand that he was one of five inspectors who could have been dismissed legally. We must regard this case from the standpoint of fact and not of hypothesis. It is a fact that the simultaneous discharge of the nine inspectors was not lawful, and petitioner, as one of the group of nine, has the right to assert that illegality.

The chief charges petitioner with laches in bringing this proceeding. It was instituted June 7, 1933. Laches "is delay which places another at a disadvantage." *Carter v. Carter*, 107 W. Va. 394, 148 S. E. 378. It is not shown how the delay from March 17th to June 7th prejudiced the chief.

The chief asserts that there is no fund out of which the salary of petitioner can be paid after July 1, 1933. That position is not well taken, as he admits an appropriation for the salaries of twenty mine inspectors, and the restoration of the petitioner to office makes him *one of the twenty inspectors lawfully required.* As the appropriation of 1933 provides for salaries of only $200.00 a month, the petitioner's salary will be limited to that sum since July 1, 1933.

The writ will issue accordingly.

*Write awarded.*