Dale A. SCHMITT, Corinne Breeding, Richard A. Knox, D. B. Salmon, James B. Miller, Raymond Fields, and James J. Hunter, as the State Personnel Board of the State of Oklahoma, Plaintiffs in Error,

v.

Joe B. HUNT, Defendant in Error.

No. 39203.

Supreme Court of Oklahoma.

Dec. 19, 1960.

Rehearing Denied Jan. 27, 1961.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., W. L. Keating, Oklahoma City, of counsel, for plaintiffs in error.

Collins, Moore & Sellers, Sapulpa, for defendant in error.

HALLEY, Justice.

Briefly stated this is an action by Joe B. Hunt, the insurance Commissioner of the State of Oklahoma to restrain the State Personnel Board of Oklahoma from bringing the employees of the State Insurance Department and of the State Insurance Commissioner under the jurisdiction of the Personnel Board. The Director of the Personnel Board notified the State Insurance Department that under a schedule adopted by the State Personnel Board that the State Merit System for Personnel Administration would be extended to include the employees of the State Insurance Department as of April 25, 1960. This suit was filed to prevent such action.

The counsel for the respective parties to this proceeding have briefed this case under five heads which are as follows:

"1. The action is not premature.

"2. The act in question attempts an unlawful delegation of legislative authority to the State Personnel Board.

"3. The act in question usurps the prerogatives and duties of the Insurance Department of the State of Oklahoma, and of the Insurance Commissioner of the State of Oklahoma.

"4. The act in question attempts an unlawful delegation of legislative authority to the Governor of the State of Oklahoma.

"5. The act in question violates the constitutional provisions of this state in regard to appropriation of public funds."

Since the important thing in this lawsuit is the constitutionality of Title 74, Ch. 27, O.S.Supp.1959, which we are deciding, we will not discuss the first proposition. The prematurity of this suit is of no concern.

Parties will be referred to as they appeared in the trial court.

We will discuss the remaining propositions in their order. We think it would be helpful to set out the purpose as set out in the first paragraph of the Act:

"The general purpose of this Act is to provide all citizens a fair and equal opportunity for public service, to establish conditions of service which will attract officers and employees of character and ability, to establish uniform job and salary classifications, to increase the efficiency and economy of the governmental departments and agencies by the improvement of methods of personnel administration, to provide a statutory basis for the existing merit system of personnel administration covering the employees of the State Employment Security Commission, Crippled Children's Commission, the State Department of Health, and the State Department of Public Welfare, and to provide for the extension of the merit system to the employees of such other state agencies or departments as the Governor may direct by an Executive Order. The Legislature further declares that, in its considered judgment, the proper administration of our State government requires the enactment of this measure."

In the consideration of the constitutionality of any Act of the Legislature it must be borne in mind that such an Act should be held constitutional unless its unconstitutionality is shown beyond a reasonable doubt. Bailey v. State Board of Public Affairs, 194 Okl. 495, 153 P.2d 235;

Leveridge v. Oklahoma Tax Commission, Okl., 294 P.2d 809. See also the cases shown in West's Oklahoma Digest, Constitutional Law, ⊜⇒48.

The function of the Court is clearly limited to the determination of the validity or invalidity of the Act. There is a presumption that the Act is constitutional. Application of State of Oklahoma Building Bonds Commission, 202 Okl. 454, 214 P.2d 934.

Under proposition II the plaintiff says that Title 74, Ch. 27, attempts an unlawful delegation of legislative authority to the State Personnel Board and for that reason is unconstitutional. With this contention we cannot agree.

To us there is nothing in the Act that takes away any power of the Legislature or unlawfully delegates legislative authority to the Personnel Board. Surely the Legislature would not undertake to enumerate the entire gamut of operations of the Board. From necessity, it has become increasingly imperative that many quasi-legislative functions be entrusted to departments, boards and commissions. These things must be done in this way or they cannot be done at all, and their doing, in a very real sense, makes for the safety of the republic and is thus sanctioned by the highest law. Cornell v. Harris, 15 Cal.App.2d 144, 59 P.2d 570. In order to have a successful operation of an institution of the kind set up by the Legislature to insure improvement of the personnel problems involved in the operation of a State Government the Board in control must have some leeway in its operations or otherwise it could not move.

Today there are at least fifteen State Merit System Acts operating in other jurisdictions, which contain similar provisions to our Title 74 O.S.Supp.1959, Section 805 (2) and they have not been declared unconstitutional.

The authority to make rules and regulations carrying out the purposes of Merit Systems or Civil Service Acts has been held not to be an unlawful delegation of legislative authority in the following cases

from other jurisdictions: Yeilding v. State ex rel. Wilkinson, 232 Ala. 292, 167 So. 580; Cornell v. Harris, supra; People ex rel. Akin v. Kipley, 171 Ill. 44, 49 N.E. 229, 41 L.R.A. 775; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49; Opinion of the Justices, 138 Mass. 601; Gregory v. Kansas City, 244 Mo. 523, 149 S.W. 466; Green v. State Civil Service Commission, 90 Ohio St. 252, 107 N.E. 531; State ex rel. Buell v. Frear, 146 Wis. 291, 131 N.W. 832, 34 L.R.A.,N.S., 480.

The foregoing cases sustain the general rule announced in 10 Am.Jur., Civil Service, Section 4, as follows:

"It is a well-recognized principle that a state legislature may enact laws providing that appointments to public offices or positions shall be made according to merit and fitness and that such merit and fitness must be ascertained by competitive examination. Such laws, though assailed on many grounds, have, with only a few exceptions based upon some particular feature of the law or some particular constitutional provision, been uniformly held constitutional. The main consideration in the selection of officers and agents is the public welfare. * * * A public office is not the property of an officeholder within the constitutional provision against depriving a man of property; nor does it ever become a vested right as against the right of a state to remove its incumbent.",

and 16 C.J.S. Constitutional Law § 138, p. 621, which is:

"Civil Service. The legislature may establish a civil service commission, and, within limitations imposed by the constitution, may confer on it authority to adopt and enforce rules for carrying into effect the provisions of a civil service statute, including rules governing the appointment of public officers, their tenure of office, the preparation and holding of examinations, the grading of papers, the granting of veterans' preference, promotion, and removal;

to classify offices and employments; to determine exemptions on account of the impracticability of ascertaining merits by examination; and to make investigations concerning the action of persons in the public service and make reports thereof.

"Retirement. The legislature may delegate to executive officers or agencies various powers with respect to the retirement of public officers or employees."

While we have not previously considered the validity of this Act, we have heretofore considered in other cases many of the legal problems presented and argued in this case.

In Associated Industries of Oklahoma et al. v. Industrial Welfare Commission et al., 185 Okl. 177, 90 P.2d 899, 901, the fourth paragraph of the syllabus is as follows:

"Power to determine the policy of the law is primarily legislative, and cannot be delegated whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions, although partaking of a legislative character, is in its dominant aspect administrative and can be delegated."

In Atchley v. Board of Barber Examiners, 1953, 208 Okl. 453, 257 P.2d 302, 303, the third paragraph of the syllabus is in part as follows:

"* * * The authority to make rules to carry out the policy declared by the Legislature is administrative and not legislative even though the Legislature has provided that a violation of such rules shall be punished as a public offense."

The Oklahoma Merit System Act substantially follows the traditional patterns of other state merit or civil service acts. None of these do more than establish the basic provisions as to the manner in which appointments, promotions and status of "classified" state employees may be effected. The constitutionality of certain of such statutes, challenged on the ground that there had been an unlawful delegation of

legislative authority, has been upheld in the decisions heretofore cited. The courts distinguish between the unlawful delegation of "legislative power" and authorization to augment or implement the civil service or merit act. This Court has recognized this principle in Harris v. State, 1952, 207 Okl. 589, 251 P.2d 799, wherein the second paragraph of the syllabus is as follows:

"The Legislature cannot delegate legislative power, but it may delegate authority to be exercised under and in pursuance of the law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend."

The plaintiffs rely on two Arizona cases to sustain their position but these cases are so different from the case at bar that there is no comparison. In Tillotson v. Frohmiller, 34 Ariz. 394, 271 P. 867, an initiative measure which gave the Board of Control the power to establish manufacturing and similar establishments, the right to start a State Banking System and to provide funds therefor was being considered by that court. Specific provisions of the Constitution were violated by this measure and it was held unconstitutional. It is not comparable to the question here.

In Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854, an initiative measure was also involved. It gave to the State Civil Service greater powers than that given to our Board and some provisions which were in conflict with the Arizona Constitution. The opinion approved the rule that the Legislature may leave to officers and boards and commissions the duty to determine whether the facts exist to which the law itself is restricted. We say that a Merit System can be established and we think that the powers granted the Personnel Board are in harmony with our constitutional provisions.

■■■ The third proposition discussed is "The act in question usurps the prerogatives and duties of the Insurance Department of the State of Oklahoma and of the Insurance Commissioner of the State of Oklahoma." The three sections of the Con-

stitution of Oklahoma that touch on the Insurance Department and Insurance Commissioner are Sections 22, 23 and 24, Article VI, and are as follows:

"22. There is hereby established an Insurance Department, which shall be charged with the execution of all laws now in force, or which shall hereafter be passed, in relation to insurance and insurance companies doing business in the State.

"23. There shall be elected by the qualified electors of the State, at the first general election, a chief officer of said department, who shall be styled 'The Insurance Commissioner,' whose term of office shall be four years: * * *

"24. The Insurance Commissioner shall give bond, perform such duties, and possess such further qualifications as may be prescribed by law."

There is nothing in these sections vesting in the Insurance Department or Insurance Commissioner the power or right to appoint the employees of these offices. Sections 22 and 24 subject such offices to the force and provisions of laws later passed by the Legislature. Without further elaboration we think such provisions eliminate any contention of continued appointive power under any provisions of law prior to the adoption of the Constitution.

This conclusion has support when considered in the light of the appointive power, and under which plaintiff presumably is acting, provided by the Legislature when it enacted 36 O.S.Supp.1959, Section 305, passed in 1957, which in part provides:

"The Insurance Commissioner may appoint such deputies, assistants, examiners, actuaries, attorneys, clerks and employees, at salaries to be fixed by the Insurance Commissioner, as may be necessary properly to discharge the duties imposed upon the Insurance Commissioner under this code. The Insurance Commissioner shall appoint all examiners for his office. * * *"

We do not consider the given right to appoint such employees as being conclusive on the Legislature or not being subject to qualification or change. In 10 Am.Jur., Civil Service, Section 4, p. 924, it is stated:

"The legislature may confer a power of appointment upon a designated official and then restrict his discretion to a selection among appointees found to possess the requisite qualifications ascertained by tests and civil service examinations. * * *"

Neither do we consider the Act objectionable by reason of any complaint that it would be impracticable to fill certain positions by competitive methods because of the confidential nature thereof or required peculiar or unique abilities needed to fill such positions. Section 802 provides the order placing the agency or department under the Merit System may provide "exempt positions as stipulated by said order." This is a matter to be resolved on hearing and conference as set forth in Section 805(5) and thereby insure the proper working of the Act in accordance with the announced policy of the Legislature.

In 10 Am.Jur., Civil Service, Section 13, p. 935, it is stated:

" * * * Positions placed in an exempt class by the action of civil service commissioners have been held to constitute an exception to a constitutional mandate that all positions as far as practicable must be filled only after competitive examinations, but the decision of a commission to exempt a position must be based upon the impracticability of selecting appointees on the basis of competitive examinations. * * *"

We do not see how the Merit System Act in any way curtails the powers and duties of the Insurance Department or Insurance Commissioner as provided by our Constitution. It simply furnishes a different method for obtaining personnel. Those provisions of the Statutes which affect these two agencies were made by the Legislature and can be changed by the Legislature.

The fourth proposition before us is "The Act in question attempts an unlawful delegation of legislative authority to the Governor of the State of Oklahoma." This is the point on which the trial court held Title 74, Ch. 27, O.S.Supp.1959, as unconstitutional. With all due respect to the views of the eminent trial judge we believe that he misconceives the provisions of the Act before us. This question has much in common with the proposition which we first discussed in this opinion. As with the first we cannot see that the Legislature has unlawfully delegated any legislative authority to the Governor.

The first two paragraphs of Section 802, of the Act in question are as follows:

"The word agency as used in this Act is defined to mean any board, commission or institution of the State Government. The Governor of the State of Oklahoma, upon determining that the merit system of personnel administration with the rules and regulations adopted thereunder should be required, is hereby empowered and authorized, at his discretion, by an Executive Order, to place any agency or department of the State Government, and the employees thereof, with exempt positions as stipulated by said order, under the merit system of personnel administration prescribed by this Act and the rules and regulations promulgated hereunder by the State Personnel Board. This Section shall not authorize by Executive Order the removal of any agency or department of State government placed under the merit system of personnel administration prescribed by this Act and the rules and regulations promulgated hereunder by the State Personnel Board.

"Notwithstanding any provisions to the contrary, this Act shall not be extended to any department or agency or employee, except in the manner and as provided in this Section. Pending the issuance of any such Executive Order by the Governor and pending the effective date of the system as specified in any of said orders by the Governor, the agency or departmental merit system for personnel administration heretofore established ,in any of the State departments shall be in full force and effect."

■■■ There is nothing in this provision which gives the Governor unlawful legislative authority. It simply provides for the implementation and progress of the Merit System. It enables such system to begin its operation in an orderly way. The Governor has done what the Legislature intended that he do and that was to bring the employees of the State of Oklahoma under a Merit System just as soon as possible. More than 90% of such employees are now under it. When an Act is an accomplished fact and the intention of the Legislature is carried out, it would be unsound to hold that because the Governor might not carry out the provisions of the Act it is unconstitutional. There is nothing to show that the Governor had any other idea than to carry out to the fullest the administrative duties placed upon him by the Legislature. Should the Legislature be dissatisfied because all employees are not under the Merit System as set up it could very easily bring them under the Act. We feel sure that the Governor will carry out to the fullest the duties placed upon him under this Act in due season.

■■■ It is argued by plaintiff that the Governor is authorized by the Act to repeal certain existing statutory enactments which authorize the Insurance Commissioner to employ such clerks and assistants as may be necessary to properly discharge the duties imposed upon him as the Insurance Commissioner. We do not believe the Act is susceptible of this construction.

Section 20 of the Act in question repeals any and all other Acts or parts of Acts which are in conflict with any of the provisions of this Act. The total effect of the repealing clause, when considered in connection with Section 2 of the Act, is that the repealing clause does not go into effect so as to repeal Acts in conflict therewith un-

til the Governor signs an Executive Order. As applied to the Insurance Commissioner it means that the existing law which authorizes the Commissioner to employ his assistants will be repealed when the Merit System becomes effective as to his department. It is then that the old law comes into conflict with the new. The Legislature has simply delayed the time when the repeal will become effective. In this connection it is interesting to note Section 9 of the Act.

In Section 9, it is provided:

"If and when this Act and the rules and regulations issued hereunder have met the standards required for a merit system of personnel administration by interested Federal agencies, it shall supersede the merit system provided by any Oklahoma Statute now in full force and effect. * * *"

From the foregoing it is clear that it was intended that conflicting laws would be superseded and repealed as a matter of law, when the Merit System is invoked for any particular department or agency of government.

Under the view herein expressed the Legislature incorporated in the Act the policy of the State applicable to the employees of the State. There is no question that a statutory enactment may ordinarily provide that it will take effect on the happening of some future event. Firemen's Benevolent. Ass'n v. City Council of City of Santa Ana, 168 Cal.App.2d 765, 336 P.2d 273; State of New Mexico v. Spears, 57 N.M. 400, 259 P.2d 356, 39 A.L.R.2d 595; 82 C.J.S. Statutes § 410, p. 979.

There is no merit in the contention that the Legislature failed to furnish standards or rules for the guidance and use of the Governor preliminary to the making of an order. In examining and analyzing the entire Act we find sufficient standards in the intent and policy set forth in the Act to guide the Governor in determining if and when the Act should become operative as to any agency or department of government. All that remains to be done is for the Governor to extend the Act to the Insurance Department and the department of the Insurance Commissioner. The Act becomes operative as to these upon an act or event, which in this case is an order of the Governor and which is essentially an administrative act. LePage v. Bailey, 114 W.Va. 25, 170 S.E. 457, 458. As to this particular point we hold that the Act is not repugnant to the Constitution but that the Act does not become effective or operative until such time as the Executive Order is actually issued as to any particular department or agency of government.

The Governor was entrusted with certain responsibilities under this Act. It was the type of thing that could have been given to any administrative agency.

Plaintiff's contention herein is similar to that presented in Associated Industries of Oklahoma v. Industrial Welfare Commission, supra [185 Okl. 177, 90 P.2d 902], wherein it was urged that the "Minimum Wage Law" was unconstitutional as constituting an unauthorized delegation of legislative power. It was there contended the Commission was given a "roving authority" and to exercise its whim in the selection of the industries to be included in its operation. Our statement in that decision is applicable to the present situation:

"The view is advanced that the legislature has delegated an unwarranted authority to the Commission in that it has failed to designate the particular industries included in its operation and given the Commission a 'roving authority to select' the trades, occupations or professions to which its power shall be applied and in so doing to exercise its whim if it so chose, in the selection to be made. This challenge to the validity of the act is based upon a misinterpretation of the act. It does not leave to the Commission the power to determine to what industries the act shall be made applicable, but on the contrary by the act itself it is made applicable to, and requires the maintenance of proper working conditions and adequate minimum wages in all industries except those designated as excluded."

We think that when the thing the Legislature intended has become a reality and a working unit in the government of this State we are not at liberty to lightly say the original Act is unconstitutional.

The plaintiffs urge that the Maryland case of Ahlgren v. Cromwell, 179 Md. 243, 17 A.2d 134, upholds their position. That case is clearly distinguishable from the case at bar.

There the issue basically involved was whether the Governor could by executive order or proclamation, pursuant to the then established civil service law, repeal another statute which was not expressly or impliedly repealed. The statute authorized the Governor of Maryland to extend the merit system by executive order to employees or classes of employees excepted from or not included in the classified service by the civil service law. There was a special statute, as to watchmen, which expressly excepted such position from the operation of the civil service law. It was held by the Maryland court that the Governor could not override such special statute by placing such positions under the merit system, for the effect of the Governor's action would be to repeal the special statute, which only the Legislature could so do. This was the precise narrow issue involved in the Ahlgren case.

The Oklahoma Legislature was aware that there was a merit plan already operative in certain agencies of the State. It had the knowledge of how the Merit System had been operating in such state departments and agencies, and of the problems that had occurred in establishing merit or civil services in other states. There were many practical problems to be solved and, based on its known knowledge and experience, the Oklahoma Legislature determined to leave inclusion of agencies and departments to some administrative authority after study, and then to extend the Merit System wherever deemed practicable. It chose the Governor as the administrative authority to extend the Merit System, in his discretion, "upon determining that the merit system of personnel administration with the rules and regulations adopted thereunder should be required." 74 O.S. Supp.1959, Section 802, para. 1. This is not an unlawful delegation of legislative power, but rather a conferring of authority on the Governor exercisable only under and in pursuance of the Merit System Act. The authority granted by the Act is administrative and relates merely to the execution of the Act and does not by its terms unlawfully delegate to the Governor legislative authority.

In State ex rel. Anderson v. Fadely, 1957, 180 Kan. 652, 308 P.2d 537, 540, the seventh paragraph of the syllabus is as follows:

"The Legislature may not delegate its powers to make laws but may enact a law in general terms which confers upon an officer or board administrative duties to enforce and apply the law, and, to accomplish that end, to ascertain the existence or nonexistence of some future fact, event or condition, which the officer or board is required to ascertain; but, the statute must prescribe reasonably clear standards by which those vested with the duty to make the statute operate will do so in the manner intended. Where, however, the discretion to be exercised relates to a police regulation for the protection of the public morals, health, safety or general welfare, and it is impossible or impracticable to provide such standards and to do so would defeat the legislative object sought to be accomplished, legislation conferring such discretion may be valid and constitutional without such restrictions and limitations."

The Legislature, of course, reserves to itself, notwithstanding such authorization to the Governor, the power to preempt action by the Governor in extending the law, either in anticipation of any such action or after the Governor has so acted, where the Legislature may differ with the Governor as to the wisdom of making any

extension of the law to any particular department or agency.

Courts have distinguished between the unlawful delegation of "legislative power" and authorization to augment or implement the civil service statutes for many years. This was the basis on which the constitutionality of the Federal Civil Service Act was upheld in Butler v. White, C.C., 83 F. 578. There, the Federal Law was challenged on the ground that it delegated legislative power to the President and the Civil Service Commission. The Federal Civil Service Act authorized the President to determine, by rules and regulations carrying out the Act, to what departments and agencies and what classes of positions the Civil Service Act and rules may apply from time to time. Such distinction was also held valid in such typical cases as Green v. State Civil Service Commission, 90 Ohio St. 252, 107 N.E. 531; State ex rel. Buell v. Frear, 146 Wis. 291, 131 N.W. 832, 34 L.R.A.,N.S., 480; Opinion of the Justices, 138 Mass. 601; People ex rel. Akin v. Kipley, 171 Ill. 44, 49 N.E. 229, 41 L.R.A. 775.

The case of State ex rel. Buell v. Frear, supra, in distinguishing between the delegation of legislative authority and conferring authority or discretion to an administrative agency to carry out the provisions of a reasonably comprehensive law is in point.

This Court has sustained the delegation of authority in quite similar situations. In Wells v. Childers, 196 Okl. 339, 165 P.2d 358, we held valid the delegation of authority to the Governor in the use of the Contingency Fund as delegation of administrative power.

In Adwon v. Oklahoma Retail Grocers Ass'n, 204 Okl. 199, 228 P.2d 376, 377, we said:

"The Legislature is itself the judge of the conditions which warrant legislative enactments, and they are only to be set aside when they involve such palpable abuse of power and lack of reasonableness to accomplish a lawful end that they may be said to be merely arbitrary, capricious, and unreasonable, and hence irreconcilable with the conception and due process of law."

What we have in this case is not the unlawful delegation of legislative authority.

■ The fifth question for our determination is whether Title 74, Ch. 27, violates the constitutional provisions of this State in regard to appropriation of public funds.

It is urged that Section 813 of the Act is contrary to Sections 55 and 56, Article V of the Oklahoma Constitution. We set out the Sections from both the statutes and the Constitution:

"§ 813. Payment of administrative costs.—

"The administrative expenses and cost of operating the merit system shall be paid by the various divisions of the State Government included within the merit system by an Executive Order issued under Section 2 hereof, and each such division shall be authorized to include in its budget estimates its pro rata share of such cost, and shall remit such shares quarterly from departmental or agency funds to the personnel administration fund. Beginning with the effective date of this Act the Director shall maintain accurate records reflecting the cost of administering its provisions, and at the close of each quarter-year period he shall summarize said cost, and shall bill each department or agency included within the terms of this Act by the issuance of an Executive Order under Section 2 hereof, with a pro rata share of the administrative cost based on the relationship between the quarterly average number of employees in the classified service of such department or agency, and the quarterly average number of employees in the classified service of all the departments or agencies included within the terms of this Act by Executive Order for the appropriate calendar quarter."

"§ 55. Appropriations—Necessity and requisites

"No money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

"§ 56. General appropriation bills— Salaries—Separate appropriation bills

"The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the State, and for interest on the public debt. The salary of no officer or employee of the State, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

It is to be noted the Act in question and Section 813 thereof went into effect on July 17, 1959, and that most appropriations for the fiscal years ending June 30, 1960, and June 30, 1961, to pay salaries and operating expenses of existing State Departments and Agencies went into effect prior to July 17, 1959. We are of the opinion and so hold that Section 813, applies only to appropriations thereafter made for a department or agency for the ensuing fiscal years based on "its budget estimates" of necessary expenditures for said years. Under the foregoing estimates. distinctly

specified appropriations could be made for the benefit of the personnel administration fund. Section 813 under such construction and operation is clearly valid. We call attention to Campbell v. Cornish, 163 Okl. 213, 22 P.2d 63, where the seventh paragraph of the syllabus provides as follows:

"A statute should be given a construction in conformity with the Constitution in order that its constitutionality may be sustained, if the statute is susceptible of such a construction."

We call attention to similar provisions in the Merit System Acts of Georgia and Florida which have never been held invalid and are as follows:

"Sec. 110.10—(1). The administrative expense and costs of operating the merit system shall be paid by the various divisions of state government, and each such division shall be authorized to include in its budget estimates of its pro-rata share of such cost."

"40-2207(e). * * * an annual budget covering all the costs of operating the Merit System Council * * upon the approval of such budget by the Governor he shall be empowered to direct that the necessary pro rata share of the several departments concerned be made available for expenditure by the Merit System Council * * and without the necessity of further approval by the respective departments from whom said funds are to be derived: * * *"

We think, however, that where any agency or department brought under the Merit System has funds available the same may be used by it to pay the State Personnel Board as the agent of such department in examining the qualifications and employing its authorized personnel and to compensate the Personnel Board for its services in the manner set forth in Section 813 of the Act and in which case Section 55, Article V of the Constitution would not be either involved or violated.

We cannot see where Article V, Section 56 of the Constitution is in any way vio-

lated by Title 74, Ch. 27. It deals with appropriations and salaries that are in no way affected by this Merit System Act.

The plaintiff cites Ex parte Pope, 33 Okl. Cr. 5, 242 P. 290, and approved in State ex rel. Perkins v. Sneed, 143 Okl. 142, 287 P. 1021, as sustaining his position. That case held an Act unconstitutional because of the lack of public supervision. Such situation does not exist in the present case as there is an abundance of public supervision provided in Title 74, Ch. 27.

We consider the Act we have under scrutiny constitutional and that it violates no provision of our Constitution.

The judgment of the trial court is reversed with instructions to enter judgment for the defendants and denying the plaintiff any relief in this case.

DAVISON, C. J., WILLIAMS, V. C. J., and WELCH, JOHNSON and JACKSON, JJ., concur.

BLACKBIRD, IRWIN and BERRY, JJ., dissent.

BLACKBIRD, Justice (dissenting).

I cannot concur with the majority opinion. *I agree that the purposes of laws like our Merit System Law,* or Act, (Tit. 74, O.S.1959, Supp., Secs. 801–819, both inclusive; Tit. 74, Chap. 26, S.L.1959) *are good; and,* in accord with our duty toward all legislative enactments, *should be upheld if they do not clearly conflict with the Constitution.* In my opinion, however, there is one provision of the Act in question, which unmistakably does violence to the oldest principle of constitutional government in this State and Nation, namely, the separation of powers between branches of Government. The majority opinion glosses over this breach of fundamental principle with generalities, and makes an inadequate and unconvincing attempt to distinguish this case from the only court decisions that are really in point.

The Insurance Department was established by the Oklahoma Constitution, art. VI, sec. 22. The Commissioner of Insur-

ance is one of the elected state officials, in whom said document vested, along with the Governor, "The Executive authority of the State" (Ibid. sec. 1). He is the "chief officer" of the Insurance Department, (Ibid. sec. 23); and among the duties prescribed for him at an early date by legislative enactment, pursuant to constitutional mandate (Ibid. sec. 24) was that of selecting the personnel for that office. R.L.1910, sec. 3409, which was in force more than 40 years and appears in the 1951 Oklahoma Statutes as Tit. 36, sec. 43, provided:

> "The Insurance Commissioner may * * * employ such clerks and assistants as the public business in his charge may require, which * * * shall be removable at * * * (his) * * * pleasure * * *; * * *"

The present law (Tit. 36 O.S.1957, and 1959, Supp. sec. 305) enacted in 1957, provides:

> "A. The Insurance Commissioner may appoint such deputies, assistants, examiners, actuaries, attorneys, clerks and employees, at salaries to be fixed by the Insurance Commissioner, as may be necessary properly to discharge the duties imposed upon the Insurance Commissioner under this code. * * *"

As will be noted from the above-quoted statute, the Legislature has, by said enactment, vested in the Insurance Commissioner the exclusive prerogative of selecting the employees of the department of government, of which he is the chief officer.

Under the Merit System Law enacted in 1959, supra, the selection of personnel for state departments or offices, subject to being brought under its operation (except certain categories specifically exempted and not material here) is far from being the unfettered prerogative of the heads of those departments or offices. Employees under said Act are referred to as being in "classified service" and can obtain and keep positions only as prescribed by said Law, which is administered by the State Personnel Board, and a State Personnel Direc-

tor selected by it. A duty of said Board, as prescribed by sec. 805(2) of the Act, is to:

"Adopt * * * or establish such rules and regulations as may be necessary to give effect to the merit system * * *. Such rules and regulations shall include provision for the establishment and maintenance of classification and compensation plans according to their respective duties and responsibilities, the conduct of examinations to determine by competitive performance exclusively on the basis of merit, efficiency and fitness, the qualifications of· all candidates for positions in the classified services, the establishment of registers of persons eligible for appointment under the merit system, the certification of eligible persons, appointments, promotions, transfers, demotions, separations, tenure, reinstatement, appeals, service ratings, payroll certification, and make rules and regulations covering all classified personnel transactions, and regulate *all conditions of employment* included within the terms of this act * * *." (Emphasis mine.)

The Act also contemplates, in said section, that the Board will make provision for temporary appointments. The act also provides, in its section 812, that the State Personnel Board shall, by rule, establish a procedure for the "suspension, reduction in pay, demotion, and discharge of employees in the classified service * * *." for certain causes specified therein. It also provides procedure for review, by the Board, of such personnel action.

For the employment of persons in offices brought under the Merit System or classified service, sec. 811 of the Act provides:

"Under the supervision of the State Personnel Board the Personnel Director shall be responsible for the conduct of such promotional and competitive examinations and entrance examinations as may be necessary and required under this Act. Such examination shall be of such character as to determine the qualifications, fitness, and ability of the persons tested to perform the duties of the class of positions for which such tests or examinations are given. * * *."

Section 808 provides:

"(2) An employee who shall have been employed for less than· two years on the date the position in which he is so employed is made subject to the provisions of this Act *shall be required* to pass such tests or examinations and comply with such rules and regulations as may be required by the State Personnel Board *before obtaining a status* within the merit system and *any such employee who fails to so qualify shall be discharged immediately and shall not be re-employed until he has so qualified.* * * *. (Emphasis mine.)

Section 810 provides:

"No state disbursing or auditing officer shall make or approve or take any part in making or approving any payment for personal·service to any person holding a position in the state classified service, * * * unless the payroll voucher or account of such pay bears the certification of the Director, or of his authorized agent, ·that the persons named therein have been appointed and employed in accordance with the provisions of this Act and the rules, regulations, and orders promulgated hereunder. The director may for proper cause withhold certification from an entire payroll or from any specific item or items thereon. * * *."

Without quoting in further detail, the numerous provisions of the Merit System Law creating personnel restrictions, administered and enforced exclusively by the State Personnel Board and State Personnel director, it is plain that, though the Law itself does not directly, or by reference, repeal, and/or amend, Tit. 36, sec. 305, supra, the bringing of the Insurance Department and Office of Insurance Commissioner under its operation, would do so. Yet, instead of retaining this prerogative of repealing, or amending previous laws, in itself, the

Legislature has purported to hand it over, without restriction, or standard to go by, to the Governor, or Chief of the executive branch of our government, by providing in sec. 802 of the Act:

" * * * The Governor of the State of Oklahoma, upon determining that the merit system of personnel administration with the rules and regulations adopted thereunder should be required, is hereby empowered and authorized, *at his discretion,* by an Executive Order, to place any agency or department of the State Government, and the employees thereof, with exempt positions as stipulated by said order, under the merit system of personnel administration prescribed by this Act and the rules and regulations promulgated hereunder by the . State Personnel Board. * * *." (Emphasis mine.)

By this Section, the Legislature has not only enabled the Governor to drastically amend, or—from a' practical standpoint—to virtually emasculate, or repeal the hereinbefore cited Law giving the Insurance Commissioner the right to select various categories of employees and assistants he considers necessary, but it has purported to surrender to said Chief Executive (under administration of the State Personnel Board and the State Personnel Director) the power of determining (by executive order, supplemented by administrative rules and regulations) what shall be the "law" with reference to at least part of their duties, and the conditions, under which they shall work and retain their positions. To paraphrase an expression of the court in Hernandez v. Frohmiller, 68 Ariz. 242, 20 ł P.2d 854, 862: Legislation may pass to state officials, or boards, the power to find facts or conditions properly prescribed under which the law, as enacted, will, or will not operate, *but it may not permit them "to say what the law shall be."* The latter is a legislative function. In the cited case (204 P.2d at page 863) the court quoted the following from Holgate Bros. Co. v. Bashore, 331 Pa. 255, 200 A. 672, 674, 117 A.L.R. 639:

"The well recognized prohibition against the delegation of legislative power is a necessary outgrowth of the fundamental theory of the separation of governmental functions which permeates our State and Federal Constitutions alike.

*        *        *        *        *        *

"The legislature may, however, leave to administrative officers, boards and commissions, the duty to determine whether the facts exist to which the law is itself restricted. *In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed.*" (Emphasis mine.)

As to the power vested in the Governor by the Merit System Law, the same things can be said here that were said of the power given the Department of Labor and Industry, by the legislation involved in the Holgate Bros. Co. case. There is no policy set up, there are no standards, and—except for exemptions from the Act—there are no boundaries within which the Governor must exercise his discretion. There is merely the naked authority given him to make new law by altering, amending, and virtually repealing the old, but still existing, law (Tit. 36, sec. 305, supra), which gives the Insurance Commissioner exclusive control of the employees of the department of which he is executive head, or chief officer. · As said in the quoted case: The power to amend, or repeal, a statute is as much legislative in nature, as the power to enact it. The Hernandez case· also quotes Kellerman v. City of Philadelphia, 139 Pa. Super. 569, 13 A.2d 84, 86, as follows (20 ł P.2d at page 863):

"But any legislative enactment which vests in a person or body of persons *free of any standard independent of his or their own mind and judgment* the power of supplying, or giving force to, or suspending its terms ' falls beyond

the limits of judicial approval evidenced in the foregoing authorities, and is unconstitutional as a delegation of the power reposed exclusively in the legislature. * * *." (Emphasis mine.)

In Ahlgren v. Cromwell, 179 Md. 243, 17 A.2d 134, 136, the court applied the same fundamental tenet of separation of powers, upon which the Hernandez case was bottomed, in a case, which on principle, is no different from the present one. That case involved the positions of State House watchmen at the Maryland State Capitol. Sec. 59 of Article 41 of an Act of that State's legislature of 1906, Code Pub.Gen. Laws 1924, art. 41, § 59, provided that its Governor should appoint persons to those positions. Similar to our sec. 802, supra, that State's Merit System Act of 1920, in its section 21, chapter 41, contained the following provision:

"The Governor, may, by executive order, from time to time, add to the classified service such offices and places of employment * * * not included in the classified service * . * * *as he may think advisable; * * *."* (Emphasis mine.)

After passage of the cited law, Maryland's Governor Ritchie, in an exercise of the authority given him by the quoted section, issued an executive order bringing State House watchmen under said Merit System. In 1937, Ahlgren took the examination scheduled under said Law for the position, passed it, was then certified for appointment, and was appointed State House Watchman, in which employment he served until nearly mid-year of 1940, when he was discharged, by order of the Governor on the theory that his position never was rightfully under the Merit System, and that therefore he was removable, (without preferment of charges) by said Executive. Ahlgren then petitioned the Circuit Court for a writ of mandamus to compel Cromwell, the State's superintendent of public building and grounds to reinstate him. The court sustained said defendant's demurrer

to Ahlgren's petition, and held the hereinbefore section 21, chapter 41 invalid.

In upholding the Circuit Court's action, the Maryland Supreme Court said:

"Section 59, article 41 of the Code, (Act of 1906) which provides for the appointment of watchmen by the Governor, is an Act of the Legislature, as is chapter 41 of the Act of 1920, * * and there is nothing in the Act of 1920 which expressly or by implication repeals it, unless the delegation of power in the Governor by section 21 is to be so construed. What this section does, if valid, is not to disturb section 59 of article 41, by the Act of 1920, but to give the Governor the power to recognize and follow it, or to repeal it at his pleasure; in other words, so far as section 59 is concerned, grant to the executive power to legislate. It was a legislative act to adopt the provision for the appointment of the watchmen; it requires action by the Legislature to repeal or amend it, * * *.

"Article 8 of the Declaration of Right says: 'That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.' To enforce section 21, chapter 41 of the Act of 1920, would be a violation of the Declaration of Rights. As we said in Bradshaw v. Lankford, 73 Md. 428, 21 A. 66, 11 L.R.A. 582, 25 Am.St.Rep. 602: 'By the constitution of this state the power to enact laws belongs to the general assembly, composed of the senate and the house of delegates, and this being so, it is a well-settled principle of constitutional law that the power thus delegated cannot be redelegated to the people themselves. Our government is a representative government, and, to the members of the general assembly, the people have confided the power to pass such laws as they, in the exercise of their judgment, may deem best for the

public interests, and they have no power to substitute the judgment of others in matters of legislation for the judgment of those to whom this sovereign trust has been committed.' * * *."

There is no difference, that is material here, between the separation of powers enjoined upon this State, by its Constitution (Okl. Const., art. V, Sec. 1; art. VI, sec. 1) and that described in the Maryland Declaration of Rights. Nor is there any such difference between the broad power to legislate which that State's 1920 Merit System Law purported to give its Chief Executive, and that which section 802, supra, purports to give our Governor. In accord with the foregoing principles I can only conclude that said section, as it may be used to bring the Insurance Department and office of Insurance Commissioner under operation of the Merit System Law is unconstitutional as an unlawful delegation of legislative power to repeal and/or amend Tit. 36, sec. 305, supra.

As will be noted from the majority opinion, it attempts to distinguish the above described Maryland case by placing undue emphasis on the fact that the Maryland Act's above quoted Section 21 was contrary to its Section 2, (vaguely referred to therein as "a special statute") which specifically excluded State House watchmen from the Act's operation. A reading of the Maryland Court's opinion, however, readily shows that no such emphasis was therein given that fact, and that the opinion turned upon the fact that the Maryland Governor's Executive Order purporting to extend that State's merit system to State House watchmen constituted an attempted exercise of exclusively legislative power *to repeal the earlier Act of 1906* (that had become Section 59, art. 41 of that State's Code.)

My view of the only constitutional question dealt with herein would render null and inoperative an attempt, by an executive order such as Section 802, supra, purportedly authorizes, to subject the office of the Commissioner of Insurance and the Insurance Department to operation of the Merit System Law. This view, however, would not affect other provisions of the Act, because of its "saving clause" (Sec. 21, Chap. 26, supra). Nor would my view of the unconstitutional operation of such an order, as applied to the offices here involved, necessarily apply to other State offices with different legislative and constitutional situations or backgrounds. I would affirm the trial court's judgment granting the injunction on the ground that, as applied to the office of the plaintiff and the Insurance Department, Section 2 of House Bill No. 531 (Tit. 26, S.L.1959) enacted by the 27th Legislature as a Merit System Law (Tit. 74, O.S.1959 Supp., sec. 802) contains an unconstitutional grant of legislative power to the Governor.

I therefore respectfully dissent to the majority opinion.

IRWIN, Justice (dissenting).

I do not question the power or authority of our Legislature to enact legislation establishing a merit system for State employees; nor do I question the propriety, desirability or wisdom of the Act under consideration; but I do question the constitutionality of the Act in so far as the same is operative and/or applicable to the offices of the State Insurance Commissioner and the State Insurance Department for the reason the Act attempts an unlawful delegation of legislative power as it authorizes and empowers the Governor, in his discretion, to amend and/or repeal certain statutory provisions relating to those offices.

In my opinion, there are basic and fundamental differences between the Act in question and other acts wherein the Legislature delegated to an administrative agency the power and authority to adopt the necessary rules and regulations to carry out the law enacted by the Legislature. The distinguishing features between the acts are: In the Act under consideration, the Governor, in his discretion, is authorized and empowered to determine, (1) if and when the Act is to become operative and applicable to any agency or depart-

ment of government, (2) which agency or department the Act will be operative or applicable, (3) whether any agency or department will continue to be governed by existing laws or will the existing laws be amended and/or repealed and the Act to become operative in lieu of such laws amended and/or repealed. In the other acts, the legislative enactments are operative and applicable, (1) at a certain time, (2) to specific or all like agencies, departments or industries, (3) and does not delegate to an administrative agency the power to determine if certain laws shall be amended and/or repealed.

In my opinion, the authorities sustaining those legislative enactments are not applicable and do not sustain the fundamental issue involved in this case. As an example, the power to delegate authority to an administrative agency to adopt rules and regulations to carry out a legislative enactment was sustained in Associated Industries of Oklahoma v. Industrial Welfare Commission, 185 Okl. 177, 90 P.2d 899, 901, where we held:

"Power to determine the policy of the law is primarily legislative, and cannot be delegated whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions, although partaking of a legislative character, is in its dominant aspect administrative and can be delegated."

In that case we construed the Minimum Wage Law Act wherein the Legislature created the Industrial Welfare Commission and delegated power and authority to the Commission to promulgate rules and regulations to carry out the Act. That act did not amend and/or repeal any existing laws; it did not leave to the Commission the power to determine to what industries the act would be applicable but the same was applicable to all industries; and, the operative force and applicability of the act was not discretionary. In the Act under consideration, if and when the act becomes operative or applicable, certain existing laws are amended and/or repealed; all agencies or departments of government are not under the Act, only those placed there by Executive Order; and, the operative force or applicability of the Act as to any agency or department is within the discretion of the Governor.

The powers delegated to the Commission in the Minimum Wage Law Act are similar or comparable to the powers delegated to the State Personnel Board under the act in question; that is, to promulgate rules and regulations to carry out the legislative enactment. I do not question the authority of the Legislature to delegate to the State Personnel Board the power and authority to promulgate rules and regulations to carry out the Act, but I do question the means by which the Legislature has attempted to make the Act and the rules and regulations of the State Personnel Board operative and/or applicable to any agency or department of government, which is by Executive Order. Therefore, I believe the fundamental issue involved in this action is whether or not the Legislature has delegated to the Governor, in his discretion, the power and authority to amend and/or repeal certain laws governing the operation of the offices of the State Insurance Commissioner and the State Insurance Department.

In the order granting the permanent injunction the trial court made, inter alia, the following finding:

"Title 74, O.S.A., Chapter 27, in so far as the same is attempted to be applied to the offices of the Insurance Commissioner of the State of Oklahoma, and the Insurance Department of the State of Oklahoma, is unconstitutional."

Our Constitution provides that the powers of our government shall be divided into three separate departments; the Legislative, Executive, and Judicial; and each shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others.

For brevity, I adopt the statements set forth in the dissenting opinion of Justice BLACKBIRD relating to the constitutional and statutory duties and prerogatives of the State Insurance Commissioner.

Title 74 O.S.1959 Supp., Secs. 801 to 819, establishes the Merit System of Personnel Administration. Section 801 of the Act, provides for the extension of the merit system to the employees of the State agencies or departments as the Governor may direct by an Executive Order. Section 802, empowers and authorizes the Governor, in his discretion, to place any agency under the merit system upon determining that the same should be required, and the Act cannot be extended to any department or agency except by Executive Order.

Although the Act has a "repealing clause" which provides, "Any and all other acts or parts of acts, not herein specified, which are in conflict with any of the provisions of this Act, are hereby repealed," the offices of the State Insurance Commissioner and the State Insurance Department are not governed by the Act until the Governor, by Executive Order, places them under the Act. Until the Governor does issue an Executive Order, applicable to the State Insurance Department and/or the State Insurance Commissioner, each are governed by the laws existing when the Act was passed and the valid rules and regulations of those departments, and no portion of the Act or any rules and regulations of the State Personnel Board are applicable. This is specifically set forth in the Act. Section 801 provides, "for the extension of the merit system to the employees or such other state agencies or departments as the Governor may direct by Executive Order." Section 802 provides, "The Governor * * * upon determining that the merit system * * * should be required, is hereby empowered and authorized, at his discretion, by Executive Order, to place any agency or department * * * under the merit system * * *. Notwithstanding any provisions to the contrary, this Act shall not be extended to any department, agency or employee, except in the manner and as provided in this section. * * * *"

In as much as the Act does not mention the State Insurance Commissioner or the State Insurance Department and does not specify that *all* agencies or departments of government shall be placed under the Act, the only means by which this Act can be extended to the offices of the State Insurance Commissioner and the State Insurance Department is by Executive Order. The present laws relating to the administration of those offices are not amended and/or repealed by operation of the Act itself but by virtue of an Executive Order, and the Act and the rules and regulations of the State Personnel Board are not applicable to those offices by operation of the Act, but by virtue of an Executive Order authorized by the Act. Therefore, the Act is neither operative nor applicable to the offices of the Insurance Commissioner and the State Insurance Department until the Governor, by Executive Order, extends the provisions of the Act to those offices.

In effect, the Governor, in his discretion, determines if the offices of the Insurance Commissioner and the State Insurance Board will continue to be governed by the existing laws or whether the existing laws should be amended and/or repealed and the Act become operative. The Legislature certainly did not make this determination, but delegated to the Governor the power and authority to do so in his discretion.

Without question, the power to enact new laws or to amend existing laws is a legislative function and cannot be delegated, and the power to execute and administer laws, enacted by the legislature is an executive or administrative function. The distinctions between such powers cannot be carried out with mathematical precision, but there may be a certain degree of blending of powers. While the Legislature may delegate to the executive or administrative departments some powers it may rightfully possess; it may not delegate the power to make a law, which involves a discretion as to what it shall be, although it may confer upon the executive officers

discretion as to its execution, to be exercised under and pursuant to law. See Bailey v. State Board of Public Affairs, 194 Okl. 495, 153 P.2d 235.

The extent to which the Legislature may go in delegating the powers to an administrative board to make orders that are legislative in character, without offending constitutional inhibitions, has been the subject of much judicial discussion. In Harris v. State, 207 Okl. 589, 251 P.2d 799, we held:

> "The Legislature cannot delegate legislative power, but it may delegate authority to be exercised under and pursuance of law. It may delegate power to determine some fact or state of things upon which the law makes its own operation depend."

In the second syllabus of the opinion promulgated by a majority of my associates, it is held:

> "Power to determine the policy of the law is primarily legislative, and cannot be delegated, whereas the power to make rules of a subordinate character in order to carry out that policy and apply it to varying conditions, although partaking of a legislative character, is in its dominant aspect administrative and can be delegated and the Legislature may delegate the power to determine some fact or state of things upon which the law makes its own operation depend."

In State ex rel. Anderson v. Fadely, 1957, 180 Kan. 652, 308 P.2d 537, 540, which was cited with approval in the majority opinion, the Kansas Supreme Court held:

> "The legislature may not delegate its powers to make laws but it may enact a law in general terms which confers upon an officer or board administrative duties to enforce and apply the law, and, to accomplish that end, to ascertain the existence or nonexistence of some future fact, event or condition which the officer or board is required to ascertain; but, the statute must prescribe reasonably clear standards by

which those vested with the duty to make the statute operate will do so in the manner intended. * * * "

See also Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854; Wells v. Childers, 196 Okl. 339, 165 P.2d 358; Gibson Products Co. of Tulsa v. Murphy, 186 Okl. 714, 100 P.2d 453; Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L. Ed. 1570, 97 A.L.R. 947, and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446.

In examining and analyzing the above cases and the cases cited with approval in the majority opinion, in my judgment, it has been clearly established that it is an unlawful delegation of legislative authority for the Legislature to delegate the power to amend and/or repeal a law which necessarily involves a discretion as to what the law shall be; but it is not an unlawful delegation of legislative authority for the Legislature to delegate the power to determine some fact or state of things upon which the law makes its own operation depend.

It cannot be contended that if and when the Act becomes operative and/or applicable to the offices of the State Insurance Commissioner and the State Insurance Department that certain laws relating to those offices will not be amended and/or repealed, and it cannot be contended that the laws relating to those offices are amended and/or repealed without the Governor issuing an Executive Order applicable to those offices. Therefore, has the Legislature amended and/or repealed the laws relating to those offices and merely delegated to the Governor the power to determine some fact or state of things upon which the Act makes its own operation depend; or has the Legislature delegated to the Governor the power to amend and/or repeal certain laws relating to the offices of the State Insurance Commissioner and State Insurance Department? No valid objection can be made to the first, the latter cannot be done.

The Act is not operative nor applicable to the offices of the Insurance Commissioner and the State Insurance Department

until the Governor issues an Executive Order placing them under the Act. No laws relating to those offices are amended and/or repealed until he issues the order. The Act is barren of any standard or rule to be followed and contains no provisions that the Governor determine certain facts, circumstances, state of things or specific situations be in existence or non-existent before issuing an Executive Order. The policy set forth in the Act is a standard and guide to the State Personnel Board for the purpose of promulgating the necessary rules and regulations for carrying out the Act, but it is not a standard or guide for the Governor in determining if and when the Act should become operative and applicable to the offices of the State Insurance Commissioner and the State Insurance Department. Section 809, (referred to in the majority opinion as Section 9) is not a standard or guide for the Governor to determine the applicability of the Act to the State Insurance Commissioner or the State Insurance Department, as that section relates specifically to and only to the employees of the Oklahoma Employment Commission, the Oklahoma Crippled Children's Commission, the Oklahoma State Department of Health, and the Oklahoma State Department of Public Welfare. In my opinion, there is no standard or guide for the Governor to follow, as the language of the Act is clear and unambiguous, *that upon determining that the merit system should be required, he is empowered and authorized, at his discretion, by Executive Order, to place any agency of State government under the merit system.*

In my opinion, the Legislature did not amend and/or repeal certain laws relating to the offices of the Insurance Commissioner and the State Insurance Department and merely delegated to the Governor the power to determine some fact or state of things upon which the Act would become operative; but has attempted to delegate to the Governor, in his discretion, the power and authority to amend and/or repeal certain laws relating to those offices. Entertaining such opinion, I can only conclude that the Act is unconstitutional in so far as the provisions thereof may be operative and/or applicable to the offices of the State Insurance Commissioner and the State Insurance Department.

I therefore respectfully dissent to the opinion promulgated by a majority of my associates.

BERRY, Justice (dissenting).

I am unable to agree with the majority opinion.

I am of the conviction that the Merit System Act, except as to the named agencies, violates art. 4, Sec. 1, of the Okla.Const. in that legislative power and authority is delegated to the Governor and the State Personnel Board, which Board is created by the Act.

It is provided in substance in Sec. 1 of the Act that the Merit System created by the Act shall include the State Employment Security Commission, Crippled Children's Commission, State Department of Health and State Department of Welfare and shall be extended to such other State agencies (with exceptions noted in the Act) as the Governor may by executive order bring under the Act. The language of the Act which I refer to is this:

"* * * to provide a statutory basis for the existing merit system of personnel administration covering the employees of the State Employment Security Commission, Crippled Children's Commission, the State Department of Health, and the State Department of Public Welfare, and to provide for the extension of the merit system to the employees of such other state agencies or departments *as the Governor may direct* by an Executive Order. * * *" (Emphasis supplied.)

Section 2 of the Act provides in part as follows:

"The word agency as used in this Act is defined to mean any board, commission or institution of the State Government. The Governor of the State

of Oklahoma, upon determining that the merit system of personnel administration with the rules and regulations adopted thereunder should be required, is hereby empowered and authorized, *at his discretion,* by an Executive Order, to place any agency or department of the State Government, and the employees thereof, *with exempt positions as stipulated by said order,* under the merit system of personnel administration prescribed by this Act and the rules and regulations promulgated hereunder by the State Personnel Board. * *

"Notwithstanding any provisions to the contrary, this Act shall not be extended to any department or agency or employee, except in the manner and as provided in this Section. * * *" (Emphasis supplied.)

The time within which the Governor shall bring under the Act the various State Agencies subject thereto, or the conditions which must exist before said agencies are brought under the Act, are not provided for. It follows that it is within the arbitrary discretion of the Governor to (1) bring or not bring under the Act agencies not exempted from the Act; to (2) exempt or not exempt from the Act persons holding certain positions with agencies brought under the Act; to (3) exempt persons in a given agency from the Act but place other persons holding like or similar positions in other agencies under the Act; and (4) to act when he alone chooses to act.

It is argued that the language of Sec. 1 of the Act to the effect that "The general purpose of this Act is to provide all citizens a fair and equal opportunity for public service, to establish conditions of service which will attract officers and employees" shows that the Act was intended to apply to all State agencies not specifically exempted from the provisions of the Act. I am unable to agree. In providing in Sec. 3 of the Act that certain agencies were exempt, the Legislature made clear that the phrase "all citizens" cannot be applied literally and that said phrase did not in fact apply to all citizens. It made equally clear

in the provisions of the Act first herein quoted that the merit system was only extended "to the employees of such other state agencies (agencies in addition to those specifically named) or departments as the Governor may direct by Executive Order" (Sec. 1); that the Governor may "at his discretion, by an Executive Order, to place any agency or department of the State Government, and the employees thereof, with exempt positions as stipulated by said order, under the merit system" (Sec. 2); and that "Notwithstanding any provisions to the contrary, this Act shall not be extended to any department or agency or employee, except in the manner as provided in this Section." Sec. 2. The provision last quoted embraces the provision quoted at the beginning of this paragraph.

In the second paragraph of the syllabus to Palmer et al. v. King et al., 75 Okl. 276, 183 P. 411, it is stated:

"Where general terms or expressions in one part of the statute are inconsistent with more specific or particular provisions in another part, the particular provision will be given effect, as a clearer and more definite expression of the legislative will."

See also In re State Treasury Note Indebtedness, 185 Okl. 10, 90 P.2d 19.

I am of the further conviction that the Act violates art. V, Sec. 59 of the Okla. Const. which Article reads as follows:

"Laws of a general nature shall have a uniform operation throughout the State, and where a general law can be made applicable, no special law shall be enacted."

In construing the above quoted Article, this Court has pointed out that where a statute operates upon a class, the classification must not be capricious or arbitrary but must be reasonable and pertain to some pecularity in the subject matter calling for the legislation. See Williams et al. v. Hutchens et al., 187 Okl. 268, 102 P.2d 841 and Special Indemnity Fund v. Farmer et al., 195 Okl. 262, 156 P.2d 815.

A statute which would bring under the Act only a portion of the employees of the State, doing identical work under identical conditions would clearly violate the last cited provision of the Constitution. To my way of thinking, the Legislature cannot do indirectly that which it cannot do directly by delegating to the Governor, as in the instant case, power and authority to place under this Act a class of employees of a given agency but exempt therefrom employees of another agency of the same class.

While I am convinced that the Governor would not act in an arbitrary or capricious manner in bringing agencies or the personnel of said agencies under the Act, this has no bearing on the question under consideration. In Panama Refining Co. et al. v. Ryan et al., 293 U.S. 388, 420, 55 S.Ct. 241, 248, 79 L.Ed. 446, this is said relative to the presumption that the President of the United States would act for the best interest of the public in placing in effect an act relating to the transportation of crude oil produced in violation of State law:

"Fifth. The question whether such a delegation of legislative power is permitted by the Constitution is not answered by the argument that it should be assumed that the President has acted, and will act, for what he believes to be the public good. The point is not one of motives, but of constitutional authority, for which the best of motives is not a substitute. * * *"

On the issue relative to whether the Act violates art. 5, Sec. 55 of the Constitution pertaining to appropriations, I agree with the reasoning of the majority to the general effect that an appropriation may properly be made for an agency to satisfy its contractual obligation to another agency. I do not agree, however, that an appropriation was not made for the present biennium to the several agencies that have been brought under or which may be brought under the Act to cover the expenses contemplated by Sec. 13 of the Act.

It is my understanding that in accordance with a well-established practice, the several agencies of the State which might be made subject to the Act, included in their budgets, which were submitted to the Legislature for the present biennium, a lump-sum estimate of money which would be expended for contractual services. Therefore, in view of the fact that the expenditure contemplated by Sec. 13 is for contractual services rendered agencies brought under the Act, an appropriation was in fact made for such expenditures. I add, it is my understanding that power and authority on the part of the Legislature to, in effect, create a contract between agencies brought under the Act and the State Personnel Board to cover the latter's cost of administering the merit system is not questioned.

For reasons given, I respectfully dissent from the majority opinion.