1998  OK CIV APP  34

1998  OK CIV APP  34

**Nelson P. KIFER, d/b/a The Grapevine, Plaintiff/Appellant,**

v.

**OKLAHOMA TAX COMMISSION, Defendant/Appellee.**

No. 89039.

Court of Civil Appeals of Oklahoma, Division No. 1.

Oct. 28, 1997.

Certiorari Denied March 17, 1998.

Gladys E. Cherry, Oklahoma City, for Plaintiff/Appellant.

Thomas E. Kemp, Jr., Evelyn B. Phyffer, Oklahoma City, for Defendant/Appellee.

*OPINION*

HANSEN, Presiding Judge:

¶ 1  This appeal from an order of the Oklahoma Tax Commission denying the protest of Appellant Grapevine involves the

question of whether Commission's Rule 37.018 violates the intent of the Legislature's enactment of 37 O.S.1991 § 576. We hold that it does not.

■ The Oklahoma Alcoholic Beverage Control Act, 37 O.S.1991 § 576, provides:

A. A tax at the rate of twelve percent (12%) is hereby levied and imposed on the total gross receipts of a holder of a mixed beverage, caterer, or special event license, issued by the ABLE Commission, from:

1. The sale, preparation or service of mixed beverages;

2. The total retail value of complimentary or discounted mixed beverages;

3. Ice or nonalcoholic beverages that are sold, prepared or served for the purpose of being mixed with alcoholic beverages and consumed on the premises where the sale, preparation or service occurs; and

4. Any charges for the privilege of admission to a mixed beverage establishment which entitle a person to complimentary mixed beverages or discounted prices for mixed beverages.

B. For purposes of this section:

1. "Mixed beverages" means mixed beverages as defined by Section 506 of this title;

2. "Total gross receipts" means the total amount of consideration received as charges for admission to a mixed beverage establishment as provided in paragraph 4 of subsection A of this section and *the total retail sale price* received for the sale, preparation or service of mixed beverages, ice, and nonalcoholic beverages to be mixed with alcoholic beverages. The advertised price of a mixed beverage shall be the sum of the total retail sale price and the gross receipts tax levied thereon; and

3. "Total retail value" means the total amount of consideration that would be required for the sale, preparation or service of mixed beverages.

C. The gross receipts tax levied by this section shall be in addition to the excise tax levied in Section 553 of this title, the sales tax levied in the Oklahoma Sales Tax Code, Section 1350 et seq. of Title 68 of the Oklahoma Statutes and to any municipal or county sales taxes.

D. The gross receipts tax levied by this section is hereby declared to be a direct tax upon the receipt of consideration for any charges for admission to a mixed beverage establishment as provided in paragraph 4 of subsection A of this section, for the sale, preparation or service of mixed beverages, ice, and nonalcoholic beverages to be mixed with alcoholic beverages, and the total retail value of complimentary or discounted mixed beverages.

E. The total of the retail sale price received for the sale, preparation or service of mixed beverages, ice, and nonalcoholic beverages to be mixed with alcoholic beverages shall be the total gross receipts for purposes of calculating the sales tax levied in the Oklahoma Sales Tax Code, Section 1350 et seq. of Title 68 of the Oklahoma Statutes.

¶ 2 The Oklahoma Tax Commission performed an audit under this statute for the period between March 1, 1988 and April 30, 1990 to determine if Grapevine had accurately reported its gross receipts and paid the correct sales and tourism tax. Ordinarily the tax due is computed by adding the taxpayer's purchases from the wholesaler to its beginning inventory, then subtracting the ending inventory, dividing that figure by the pour size of the drink, multiplying that figure by the price charged for the drinks and then multiplying by the tax rate. This total should equal what the taxpayer reported and paid.

¶ 3 Commission's auditor could not use this exact method because Grapevine did not have a record of beginning and ending inventory nor evidence of the pour size of the drinks, so he conducted a mixed beverage depletion audit and based his calculations of taxes due on Grapevine's purchases from the wholesaler and the inventory on hand. Under this method, the tax was assessed on the number of drinks *available* for sale, calculated on the gross receipts that should have been generated from the sale of those drinks. Commission then assessed Grapevine additional taxes based on its determination

Grapevine had additional gross receipts of $129,222.80.

¶ 4 Grapevine filed a timely protest to the proposed assessment. After hearing, the Administrative Law Judge denied the protest, making specific findings of fact, conclusions and recommendations, all of which were adopted by Commission. Grapevine paid the additional assessment, penalty and interest and initiated this appeal.

¶ 5 Grapevine reported its taxable receipts to Commission based solely on the cash register receipts from the actual sale of the beverages. Grapevine's bookkeeper testified there was no substantiation of these figures. Grapevine claims under § 576 this is the correct method for computing gross receipts. It contends Commission's Rule 37.018, goes beyond and changes the meaning and intent of the statute because it bases calculations on the number of drinks available for sale rather than the actual sales.

Rule 37.018 provides in pertinent part:

Every mixed beverage tax permit holder or any other person transacting business subject to the gross receipts tax shall be liable for the tax upon the gross receipts from such beverages (on the basis of the number of drinks available for sale, preparation, or service from the total alcoholic beverages received). Each permit holder or other person shall be liable for the gross receipts tax upon any and all disposition by his agents or employees or any other persons on the premises of the mixed beverage tax permit holders or other person,

. . . .

Upon audit of the books and records of a mixed beverage establishment for Gross Receipts Tax, it shall be assumed that spirits have been dispensed at the average rate of one and one-half fluid ounce (1 and ½ oz.) except for drinks with recipes calling for more than one type of spirit or for double portions of spirits, or upon reasonable evidence of a different rate of use. Wines will be presumed to have been dispensed at the average rate of six ounces (6

oz.) per serving. The Tax Commission may use an average rate greater or less than those set out in this Rule upon reasonable evidence of a different rate of use.

A deduction may be allowed from the gross receipts tax liability determined by an audit for losses due to undetermined causes, not to exceed five percent (5%) of the total amount of alcohol determined to be missing from inventory.

In addition, a deduction may be allowed from the gross receipts tax liability determined by an audit or other investigation of the books and records of a mixed beverage tax permit holder, for alcoholic beverages that are:

1. consumed in food as verified by the audit;

2. destroyed due to breakage for which the permit holder has retained the container or that portion thereof that has the unbroken seal and the identification stamp affixed thereto;

3. stolen, provided that reasonable evidence is provided to support a claim for theft; or,

4. not consumed, and exist or existed, at the close of a taxable period in question, provided that the amount and nature of the unconsumed inventory has been verified by agents of the Tax Commission, ABLE Commission, or verified by invoice to a mixed beverage permittee or wholesaler approved to purchase the inventory by the ABLE Commission. Partially filled bottles which are not included in a transferred inventory should be verified by a Tax Commission or ABLE Commission agent or agents.[1]

¶ 6 Two sons of the owners of Grapevine, both of whom had tended bar for Grapevine, a bookkeeper and both owners of the restaurant testified they kept daily records of sales from the cash register. However, no one remembered taking either a beginning or an ending inventory of the liquor. No witness knew the pour size. The bartenders free

---

1. The audit method employed by Commission in enforcing § 576 is described as a depletion method of auditing. Although not binding on this Court, Commission issued a precedential order denying a protest and upholding the depletion method of calculating taxes due under § 576 in an unrelated case.

poured and did not use a jigger. Pour sizes were guessed on the audit form. The owner, Nelson Kifer said he did not keep records of broken bottles, drinks returned or bottles sent back because they were unsatisfactory. Ms. Kifer testified they had no way of knowing if there were sales made for which the receipts were not deposited into the cash register.

¶7 Section 561 requires a taxpayer, such as Grapevine, to keep a record of all alcoholic beverages imported, purchased, received, manufactured, produced, sold, delivered, or otherwise disposed of, and the amount of all alcoholic beverages on hand as well as any other records as Commission may require. Grapevine did not do this. Thus Commission computed Grapevine's tax liability on the purchases from the wholesaler, from which it derived the liquor "available to be served."

¶8 It is undisputed Commission credited Grapevine with a five percent allowance for spillage, breakage and theft. That amount was subtracted from the total retail value. In its audit, Commission also accounted for strong beer sold by the bottle and liquors exempt as used for cooking. Commission relied on the financial statements provided by Grapevine. It had no way of determining what happened to the liquor purchased from the wholesaler without a beginning and ending inventory. Based on these circumstances, Commission had no option except to base the audit on purchases from the wholesaler.

¶9 An examination of § 576 makes it clear Commission must tax mixed beverages in a manner other than by simply computing sales from the cash register receipts. "Total gross receipts" includes "total retail value" of drinks. "Total retail value" is defined as the "total amount of consideration that would be required for the sale, preparation or service of mixed beverages." Section 506(33) of the Act defines "sale" as "any transfer, exchange or barter in any manner or by any means whatsoever, and includes and means all sales made by any person, whether as principal, proprietor or as an agent, servant or employee." In addition, § 586 of the Act specifically authorizes Commission to promulgate rules and regulations to facilitate the uniform and orderly collection of the § 576 tax. Section 586 is reinforced by 68 O.S.1991 § 203 which authorizes Commission to prescribe, promulgate and enforce rules and regulations to compute the tax payable by the taxpayer.

¶10 Rules and regulations enacted by administrative agencies pursuant to the powers delegated to them have the force and effect of law and are presumed to be reasonable and valid. The burden of establishing that an administrative rule is not reasonable or valid is on the party complaining of the rule. Great weight is to be accorded the expertise of an administrative agency, and a presumption of validity attaches to the exercise of expertise when an order of the agency is reviewed by a court. A court should not substitute its own judgment for that of an agency, particularly in the area of expertise which the agency supervises. *Toxic Waste Impact Group v. Leavitt*, 1988 OK 20, 755 P.2d 626.

¶11 A taxpayer is responsible for record keeping. Grapevine has not met that burden of establishing Rule 37.018 is not a reasonable or valid method for calculating taxes due. Because it kept no records other than cash register receipts, it has proposed no other method of determining its gross receipts that would comport with § 576.

¶12 In *Big Country Club, Inc., v. Humphreys*, 511 S.W.2d 315 (Tex.Civ.App.1974), the Texas Alcoholic Beverage Commission ran two audits on a private club holding a registration permit to determine if the proper taxes had been paid and determined they had not. The club paid the taxes under protest and then sued under certain Texas statutes. After an adverse ruling by the trial court, the club appealed. The president of the club presented daily cash register tapes which he testified showed the sales of which he was aware. He paid the taxes on the basis of these tapes. Commission's auditors were not satisfied with these records and through the suppliers of the beverages, determined that the club had purchased a large quantity of liquor for which there was no accounting. The auditors then utilized a depletion analysis which showed the club had under reported the taxes due. The depletion

analysis involved adding the amount purchased and the inventory on hand. Commission did not contend the club had practiced fraud, but only that it had the burden to show what happened to the unaccounted for liquor. The appellate court agreed, holding any other rule would make it impossible for the state to collect the taxes owed in this type of situation. "We think common sense would dictate that if a taxpayer fails to make reports or to keep proper records, some formula must be devised to determine the tax imposed by legislative authority." (citation omitted)

¶ 13 We adopt the reasoning of the Texas Court. This Court affords great deference to administrative agency action and we will not disturb an agency order unless it is arbitrary and capricious, that is, not founded on reason. Substantial evidence supports the position of Commission in its method of determining Grapevine's taxes due under § 576. *El Paso Natural Gas Co. v. Oklahoma Tax Commission,* 1996 OK CIV APP 69, 929 P.2d 1002.

AFFIRMED.

JOPLIN and BUETTNER, JJ., concur.