Dear Executive Director Ed Hendrix,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Does the Oklahoma State Board of Examiners for Nursing Home Administrators have the authority to limit the number of nursing facilities served by an administrator?
 2. Does the Oklahoma State Board of Examiners for Nursing Home Administrators have the authority to grant a waiver of the restriction of one administrator per nursing facility?
¶ 1 Your questions involve the general authority of the Oklahoma State Board of Examiners for Nursing Home Administrators ("Board") to determine qualifications for nursing home administrators, and the Board's ability to waive one or more restrictions on qualifications.
¶ 2 Title 63 O.S. 2001, §§ 330.51-330.63, the Nursing Home Administrators Act ("Act"), establishes the Board, states its responsibilities and fixes aspects of its operation. Section 330.53 of the Act provides, in pertinent part:
 A. The Oklahoma State Board of Examiners for Nursing Home Administrators shall have authority to issue licenses to qualified persons as nursing home administrators, and shall establish qualification criteria for such nursing home administrators.
 B. No license shall be issued to a person as a nursing home administrator unless:
 1. The person shall have submitted evidence satisfactory to the Board that the person is:
a. not less than twenty-one (21) years of age,
b. of reputable and responsible character, and
c. in sound physical and mental health; and
 2. The person shall have submitted evidence satisfactory to the Board of the person's ability to supervise a nursing home or specialized home.
Id.
¶ 3 Further, Section 330.58, entitled "Duties of Board," in pertinent part provides:
 The Oklahoma State Board of Examiners for Nursing Home Administrators shall:
 (a) Develop, impose and enforce standards which must be met by individuals in order to receive a license as a nursing home administrator, which standards shall be designed to ensure that nursing home administrators will be individuals who are of good character and are otherwise suitable, and who, by training or experience in the field of institutional administration, are qualified to serve as nursing home administrators.
 (b) Develop and apply appropriate techniques, including examinations and investigations, for determining whether an individual meets such standards.
 (c) Issue licenses to individuals determined, after the application of such techniques, to meet such standards, and revoke or suspend licenses previously issued by the Board in any case where the individual holding any such license is determined substantially to have failed to conform to the requirements of such standards.
 (d) Establish and carry out procedures designed to ensure that individuals licensed as nursing home administrators will, during any period that they serve as such, comply with the requirements of such standards.
Id.
¶ 4 The enabling statutes define a "Nursing home administrator" as:
 [A] person licensed by the State of Oklahoma who is in charge of a facility. A nursing home administrator must devote at least one-third (1/3) of such person's working time to on-the-job supervision of such facility; provided that this requirement shall not apply to a nursing home administrator of an intermediate care facility for the mentally retarded with sixteen or fewer beds (ICF-MR/16), in which case the person licensed by the state may be in charge of more than one ICF-MR/16, if such facilities are located within a circle that has a radius of not more than fifteen (15) miles, and the total number of facilities and beds does not exceed six facilities and sixty-four beds.
Id. § 330.51(2).
¶ 5 Section 330.57 of Title 63, regarding qualifications of nursing home administrators, states:
 The Oklahoma State Board of Examiners for Nursing Home Administrators shall have sole and exclusive authority to determine the qualifications, skill and fitness of any person to serve as an administrator of a nursing home or specialized home under the provisions of the Nursing Home Care Act, Section 1-1901 et seq. of this title. The holder of a license under the provisions of this act shall be deemed qualified to serve as the administrator of a nursing home or specialized home.
Id. (footnote omitted).
¶ 6 The Act thus authorizes and empowers the Board not only to develop qualifications and issue licenses to nursing home administrators, but also to "[e]stablish and carry out procedures designed to ensure that individuals licensed as nursing home administrators will, during any period that they serve as such, comply with the requirements of such standards." Id. § 330.58(d). Pursuant to rulemaking powers granted in Section 330.60, the Board has adopted rules in furtherance of its duties under the Act. Since there is no exception in either the Act or Section 250.4 of the Administrative Procedures Act ("APA"), the Board is subject to provisions of the APA, 75 O.S. 2001 Supp. 2003, §§ 250-323, regarding making and enforcing rules. 75 O.S.2001, § 250.1[75-250.1](B). Most pertinent to your inquiry, the Board's administrative rule OAC 490:10-1-6(a) provides:
 Nursing Home Administrators licensed by the Board shall not concurrently serve as the administrator of more than one nursing facility. The Board shall have the authority to grant a waiver of this restriction upon the showing of emergency, public necessity or other such conditions evidencing undue burden upon the operation of the facility. This restriction shall not apply to ICF/MR-16 beds and less [mentally retarded intermediate care facilities].
Id.
¶ 7 Additionally, in OAC 490:10-5-3 on denial, revocation and suspension of licenses:
 (a) The Board may deny an initial application, renewal application or may suspend or revoke a nursing home administrator license upon proof of any of the following disciplinary grounds:
. . . .
 (7) Concurrently serving or acting as the administrator of more than one nursing home.
Id.
¶ 8 In essence, your inquiry raises issues of whether the Board has the authority to include, as one of its requirements for a nursing home administrator, that such person may not serve as administrator of more than one nursing home, and whether such a requirement may be temporarily waived.
¶ 9 Although "power to determine the policy of the law is primarily legislative and cannot be delegated, the power to make rules of a subordinate character in order to carry out the policy legislatively determined and to apply that policy to varying factual conditions, although sharing the attributes of legislative exercise of power, is in its major sense an administrative duty which may be delegated properly to an administrative body by the Legislature." City of Sand Springs v.Dep't of Pub. Welfare, 608 P.2d 1139, 1144 (Okla. 1980).
¶ 10 Delegation of authority to administrative boards to determine qualifications of healthcare providers and monitor their performance is widely used in Oklahoma statutes governing professions and occupations.[1] In Schmitt v. Hunt,359 P.2d 198, 201 (Okla. 1960), the Supreme Court observed that in selecting persons for public service, examination for merit and fitness is appropriate and "[t]he main consideration in the selection of officers and agents is the public welfare." Id.
(quoting 10 Am. Jur. Civil Service § 4).
¶ 11 The standard for determining whether an administrative rule is valid includes: (1) whether the rulemaking power is within the authority granted by the Legislature (75 O.S. 2001, §250.2[75-250.2](B); Adams v. Prof'l Practices Comm'n, 524 P.2d 932,934 (Okla. 1974)); (2) whether the rule is supported by the intent of the Legislature, and not in derogation of the legislative purpose (Democratic Party v. Estep, 652 P.2d 271,277-78 (Okla. 1982); J. Brotton Corp. v. Okla. AlcoholicBeverage Laws Enforcement Comm'n, 822 P.2d 683, 685-86 (Okla. 1991); In re State Bd. of Med. Exam'rs, 206 P.2d 211, 215
(Okla. 1949)); and (3) whether the agency's interpretation of legislative intent is reasonable. J. Brotton Corp.,822 P.2d at 686; In re State Bd. of Med. Exam'rs, 206 P.2d at 215;see A.G. Opins. 98-40, 01-28. Thus, ascertaining the legislative intent is paramount to analysis of whether a rule is valid. J. Brotton Corp., 822 P.2d at 685.
¶ 12 In the Act providing for licensing nursing home administrators, there is no specific statement of legislative intent. However, by referring in 63 O.S. 2001, § 330.57[63-330.57] to a part of the Nursing Home Care Act, 63 O.S. 2001, § 1-1900.1[63-1-1900.1],
the Legislature showed it was cognizant of other nursing home laws. In Section 1-1900.1(B) the Legislature stated the purpose of the Act was to "improve the quality of care provided in this state's long-care delivery system for the elderly and disabled."Id. This statement of intent is the benchmark by which validity of the subject rule must be measured. To determine whether the Board's rule is valid and within lawful limits, the stated goal of improving the quality of nursing home care for the State's elderly and disabled is the "main consideration." Schmitt,359 P.2d at 201.
¶ 13 In the Act the Legislature generally outlined the basic qualifications for a nursing home administrator, authorized the Board to issue licenses to qualified persons, and specifically charged the Board with the responsibility of developing standards to conduct tests and investigations to determine whether a particular applicant is qualified to serve and to be licensed
as an administrator. See 63 O.S. 2001, §§ 330.53[63-330.53], 330.57, 330.58. The Legislature expressly stated the Board "shall have sole and exclusive authority to determine the qualifications, skill and fitness of any person to serve as an administrator of a nursing home," in addition to determining the qualifications for licensing. Id. § 330.57 (emphasis added). The Board's administrative rule OAC 490:10-5-3 relates to the licensing
process, by providing the license issued to a nursing home administrator may be suspended or revoked if such administrator undertakes to serve in more than one nursing home. Administrative rule OAC 490:10-1-6(a) relates more to the post-licensing behavior of the administrator, by prohibiting such administrator from undertaking to serve more than one nursing home. Each of these Board functions is expressly authorized by statute.
¶ 14 In adopting OAC 490:10-1-6(a), the Board interpreted the Act in furtherance of the Legislature's goal of improving nursing home care. There is a strong presumption of reasonableness and validity of a rule. J. Brotton Corp., 822 P.2d at 686. This is particularly so when the Legislature has acquiesced in the agency's interpretation, or has not taken the opportunity to modify it. Id. The Board adopted the subject rule in 1998, and the Legislature revisited the Act by amending Section 330.52 of Title 63 in 2000, pertaining to composition of the Board. See
2000 Okla. Sess. Laws ch. 91, § 1. Thus, we must conclude the Legislature chose not to correct the Board's position on qualification of nursing home administrators.
¶ 15 In the definition of a "Nursing home administrator," the Legislature plainly expected that not less than one-third of a person's working time be devoted to on-the-job supervision of the facility. 63 O.S. 2001, § 330.51[63-330.51](2). Whether the attention of a licensed nursing home administrator should be limited to onlyone nursing home is not specified in the statute. However, by providing that a nursing home administrator might be in charge of more than one facility, if (1) it is an intermediate care facility for the mentally retarded with 16 or fewer beds, (2) such facilities are "located within a circle that has a radius of not more than fifteen (15) miles," and (3) the total number of facilities does not exceed 6 and the total beds do not exceed 64, the Legislature, at least by implication, showed its concern with an administrator serving more than one facility. Id.
¶ 16 The Board has undertaken to interpret and implement the statute through adoption of its "one administrator-one nursing home" rule. OAC 490:10-1-6(a). In cases of uncertainty or ambiguity, the interpretation of a statute by the agency charged with its enforcement is "entitled to the highest respect from the courts." Cox v. Dawson, 911 P.2d 272, 277 (Okla. 1996). Administrative officers and agencies generally have discretion in the exercise of their powers and the performance of their duties, provided such discretion is fairly and reasonably exercised, and not used in an arbitrary or capricious manner. See Hennessey v.Indep. Sch. Dist. No. 4, 552 P.2d 1141, 1145 (Okla. 1976); 73 C.J.S. Pub. Admin. Law Procedure § 60.
¶ 17 To assure the interests of the public are properly protected, the Board has made rules to guide the amount of time and attention an administrator should devote to the supervision of a nursing home facility. OAC 490:10-1-6(a). The Board's rules are entitled to a presumption they are lawful and valid, adopted after due consideration. J. Brotton Corp., 822 P.2d at 686;Kifer v. Okla. Tax Comm'n, 956 P.2d 162, 165 (Okla.Ct.App. 1997). Absent any indication to the contrary, we conclude the Board's administrative rule OAC 490:10-1-6(a) is not unreasonable or arbitrary, and does not depart from the rulemaking authority conferred on the Board by the Legislature. It seems self-evident that a rule requiring an administrator to concentrate his or her efforts on one nursing home, rather than several facilities, will tend to improve the quality of care at a given facility, in furtherance of the Legislature's stated intent. We cannot say, as a matter of law, that the Board acted unreasonably or in derogation of the Legislature's intent in adopting the rule. The Board's adoption of the rule, therefore, meets the standards for lawful delegation of authority set out in the above-cited cases.
¶ 18 The Board's administrative rule OAC 490:10-1-6(a), by its terms, anticipates that under exigent circumstances, a waiver of its "one administrator-one nursing home" rule might be granted "upon the showing of emergency, public necessity or other such conditions evidencing undue burden upon the operation of the facility." Id. The Board has faxed an office procedure for handling waiver requests.[2]
¶ 19 However, the Board must, by rule, establish a procedure for consideration of waiver requests under the Administrative Procedures Act. Adams, 524 P.2d at 933-34. We conclude, subject to the adoption of such a rule, in order to protect the public health, safety and general welfare, the Board may exercise its discretion and waive application of the "one administrator — one nursing home" rule for a temporary period on a case-by-case basis, provided such waiver is not arbitrary and is based on a showing of public necessity, supported by submitted evidence, consistent with and subject to the requirements of the Administrative Procedures Act.
¶ 20 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Oklahoma State Board of Examiners for Nursing Home Administrators has the authority to limit the number of nursing facilities served by an administrator. See 63 O.S. 2001, §§ 330.51[63-330.51] -330.63; City of Sand Springs v. Dep't of Pub. Welfare, 608 P.2d 1139, 1144 (Okla. 1980); J. Brotton Corp. v. Okla. Alcoholic Beverage Laws Enforcement Comm'n, 822 P.2d 683, 685-86 (Okla. 1991).
 2. The Oklahoma State Board of Examiners for Nursing Home Administrators has the authority to grant a waiver of the restriction of one administrator per nursing facility, based upon the showing of an emergency, public necessity or other such conditions evidencing an undue burden upon the operation of the facility, subject to requirements of the Administrative Procedures Act. OAC 490:10-1-6(a); Hennessey v. Indep. Sch. District No. 4, 552 P.2d 1141, 1144 (Okla. 1976); Adams v. Prof'l Practices Comm'n, 524 P.2d 932, 934 (Okla. 1974).
 W.A. DREW EDMONDSON Attorney General of Oklahoma
 LYNN C. ROGERS Assistant Attorney General
[1] See, e.g., 59 O.S. 2001, §§ 488[59-488](B), 492.1(B) (physicians); §§ 887.4(C), 887.5 (physical therapists); 59 O.S.Supp. 2003, §§ 567.5[59-567.5], 567.6 (nurses).
[2] The waiver requires: submittal of written documentation as to the need for a temporary waiver (not exceeding 3 months); compliance by the Administrator and the nursing facilities involved with all applicable statutes, rules and regulations; and an appearance by the applicant to present supporting materials at a hearing where the Board considers such waiver request. See
Fax from Ed Hendrix, Executive Director, State Board of Examiners for Nursing Home Administrators, to Lynn Rogers, Assistant Attorney General, Oklahoma Attorney General's Office (Oct. 29, 2003) (on file with the Office of the Oklahoma Attorney General).